IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LESLIE GLADSTONE, AS TRUSTEE OF WILLIAM G. TADLOCK, INC. BANKRUPTCY ESTATE, Plaintiff, | ) | 04-1145C (Senior Judge Eric G. Bruggink) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

JOINT PRELIMINARY STATUS REPORT

Pursuant to Rule 16 and Appendix A, paragraph III, 4, of the Rules of this Court ("RCFC"), the parties file the following joint preliminary status report:

(a) Jurisdiction

Plaintiff's action arises pursuant to an express contract between William G. Tadlock, Inc. ("Tadlock") and the United States, through the Department of the Navy. The action is brought on an appeal from a deemed denial by the contracting officer of a certified claim. Plaintiff states that this Court has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1491 and 41 U.S.C. § 609. Defendant is currently not aware of any reason why this Court would not possess jurisdiction to entertain the merits of plaintiff's complaint.

(b) Consolidation

The parties do not believe that this case should be consolidated with any other case. Gladstone is plaintiff in Leslie Gladstone, as Trustee of William G. Tadlock, Inc. Bankruptcy Estate v. United States, 04-1144C. That case, however, concerns a different construction contract for a different project.

(c) Bifurcation

The parties are not aware of any reason why liability and damages should be tried separately.

(d) Deferral

The parties do not believe that further proceedings in this action should be delayed pending consideration of another case by this Court.

(e) Remand/Suspension

The parties do not intend to request remand or suspension.

(f) Joinder

The parties do not believe that additional parties should be joined.

(g) Dispositive Motions

While the parties agree that it is unlikely that dispositive motions will be filed, the parties request that on or before 30 days after the conclusion of discovery, they be allowed to file a status report regarding the appropriateness of filing dispositive motions.

(h) Relevant Issues

Plaintiff's Statement Of The Relevant Legal Issues

1.) Whether the government breached the construction contract by failing to disclose Project site conditions that differed materially from those set forth in the contract.

2.) Whether the government breached the construction contract by submitting to Tadlock plans, specifications and architectural drawings for the Project that were incomplete, contradictory, in error, and/or otherwise deficient.

3.) Whether the government constructively changed the contract by causing delays in Tadlock's performance.

4.) Whether the government negligently failed to disclose to Tadlock unforseen conditions, and/or undisclosed obstacles and complications which caused impediments to Tadlock's performance under the contract and which caused construction delays.

5.) Whether the government intentionally submitted to Tadlock plans, specifications and/or architectural drawings for the Project which were incomplete, in error or contradictory, impeding the performance of Tadlock under the contract and thus causing delays in completion of the construction Project.

6.) Whether the government breached the contract by spending undue time processing and approving requested prime covers and modifications to the contract, causing unnecessary delay in the schedule for completion of the Project.

7.) Whether the government admitted its responsibility for delay in completion of the Project, in part or in whole.

8.) Whether the government admitted that the period of time required for completing performance of the contract needed to be extended to adjust the food service equipment design drawings and specifications to correct errors, omissions and discrepancies.

9.) Whether the government breached the subject contract by preventing Tadlock's performance to accommodate events that included, but were not limited to the MCAS Miramar Air Show, and requiring Tadlock to perform cleanup and security measures without any extension of the contract performance period.

10.) Whether the government materially increased the scope and complexity of the contract, without affording adequate additional compensation to Tadlock, in ways that include but are not limited to the government's requirement for expanded footings for the buildings to

bear on formational soil.

11.) Whether the government breached the subject construction contract by causing delay in the performance of Tadlock's subcontractors under their subcontracts with Tadlock, thereby delaying the overall completion of the Project.

12.) Whether the government breached the subject contract by failing to account or compensate for utility and electrical outages that impeded Tadlock's performance under the contract.

13.) Whether the government breached the subject contract by requiring changes in equipment or material without affording adequate compensation or additional time for Tadlock to complete the Project.

14.) Whether Tadlock suffered damages as a result of the government's breach of the subject construction contract, and the amount of those damages.

15.) Whether Tadlock is entitled to a prime overhead differential on its subcontractor and/or home office costs, and at what percentage.

16.) Whether Tadlock is entitled to a profit allocation, and at what percentage.

17.) Whether Tadlock is entitled to unpaid prime contractor's bond premium costs, as a result of the government's breach.

18.) Whether Tadlock is entitled to additional unpaid subcontractors' termination costs, and in what amount, as a result of the government's breach.

19.) Whether Tadlock was entitled to an equitable adjustment in the contract terms due to delays caused by the government or other breaches of contract by the government.

<u>Plaintiff's Statement Regarding The Relevant Factual Issues</u>

This case arises from a construction contract entered into between William G. Tadlock, Inc. ("Tadlock") and the government for construction of a new enlisted personnel dining facility at Miramar Marine Corps Air Station in San Diego, California (the "Project"). Construction of the Project was completed, but completion was delayed. The cause of that delay and associated costs are at issue.

1.) Whether unforseen and/or undisclosed obstacles and complications impeded Tadlock's efforts to perform under the contract and caused construction delays that were not the fault of Tadlock.

2.) Whether errors, omissions and discrepancies in and between the Project plans and specifications, and the Project architectural drawings, impeded Tadlock's performance under the contract, causing prolonged construction delays.

3.) Whether the government accepted plans, specifications and architectural drawings from consultants retained by the government for the Project that were only 90% complete due to time constraints.

4.) Whether incomplete plans, specifications and architectural drawings supplied by the government for the Project caused construction delays and delayed completion of the Project.

5.) Whether incomplete plans, specifications and architectural drawings for the Project caused the government to spend undue time processing and approving modifications to the contract, causing delays in the schedule for completion of the Project.

6.) Whether the government required Tadlock to continue work on construction prior to approval and issuance of modifications to the contract caused by incomplete plans, specifications, and architectural drawings for the Project.

7.) Whether errors, omissions, discrepancies, and/or inadequacies in the food service equipment design drawings and specifications for the Project required revisions and adjustments, causing delay and extending the schedule for completion of the Project.

8.) Whether the government only extended the Project completion date one calendar day despite numerous modifications to the contract required to correct and/or rectify errors, omissions and/or discrepancies in and between the Project plans, specifications and architectural drawings.

9.) Whether previously undisclosed buried cementous material discovered during site demolition required Tadlock to use more powerful equipment, performing at a slower pace than anticipated and causing delay in completion of the Project.

10.) Whether a previously undisclosed concrete ductbank encasement prevented the rerouting of site utilities and disrupted other progress of the Project, causing delay in Project completion.

11.) Whether maximum water and/or power outage requirements of the Navy required additional work and efforts by Tadlock and caused further delay in Project completion.

12.) Whether undisclosed concrete encasement of existing sewer, water and utility lines and storm drains required Tadlock's expenditure of additional labor and material and caused additional delay in Project completion.

13.) Whether the government required Tadlock to stop work to accommodate government events and priorities including the MCAS Miramar Air Show and associated cleanup and security measures, without affording Tadlock any extension of the contract performance period or other compensation for the delay.

14.) Whether the government required Tadlock to enlarge and increase the size and scope of building footings to bear on formational soil, above and beyond the requirements of the contract plans, specifications and architectural drawings, causing additional effort and expense for Tadlock and further delay in completion of the Project.

15.) Whether the government unduly delayed in responding to field notices issued by Tadlock addressing errors, insufficient details, discrepancies and omissions in the Project plans, specifications and architectural drawings, causing delay in completion of the Project.

16.) Whether the government proposed changes and modifications to the specifications for material or equipment for the Project, causing additional delay and expense for Tadlock.

17.) Whether the government's failure to make timely contingent decisions caused delay in Project completion and additional expense for Tadlock.

18.) Whether various errors, omissions, failures to disclose or indecisiveness on the part of the government impeded Tadlock's subcontractors' performance under their respective subcontracts, causing further delay to completion of the Project in its entirety.

19.) Whether errors, omissions and discrepancies in and between the Project plans, specifications and architectural drawings caused disputes and disagreement to arise among subcontractors, requiring Tadlock to schedule meetings to resolve the disputes and disagreements, and to produce and issue field notices addressing the errors, omissions and discrepancies, contributing significantly to delay in completion of the Project.

20.) Whether Tadlock negotiated and submitted prime covers to address additional work needed, and/or corrections of errors, discrepancies or omissions, and completed the work required under those prime covers, without receiving modifications of contract from the

government to cover the work or payment for the work addressed in those prime covers.

21.) Whether Tadlock and the government entered into various modifications of contract increasing the contract price and adding performance obligations for Tadlock, but without extending the contract performance period accordingly.

22.) Whether the government constructively accepted completion of the Project by moving its furniture into the building on May 26, 1999.

23.) Whether the government formally accepted the Project building by initiating its warranty period on July 8, 1999.

24.) Whether the government's delay, indecision, errors and/or omissions were responsible for delay in completion of the Project, and what number of working days is allocable to this government-caused delay.

25.) Whether Tadlock incurred unpaid costs of $4,990.00 for direct materials, and $387.00 for sales tax on said materials, or some other amounts, as a result of the government's breach.

26.) Whether Tadlock incurred $92,978.00 in unpaid direct labor costs, and $31,612.00 in unpaid insurance, taxes and fringe benefits assessed on those labor costs, or some other amounts, as a result of the government's breach.

27.) Whether Tadlock incurred unpaid costs of $2,803.00 for rental equipment and sales tax of $217.00 on those costs for rental equipment, or some other amounts, as a result of the government's breach.

28.) Whether Tadlock incurred $90,656.00, or some other amount, in unpaid costs for equipment ownership and operating expenses, as a result of the government's breach.

29.) Whether Tadlock incurred a total of $287,962.00, or some other amount, in unpaid subcontractors' costs, as a result of the government's breach.

Discovery and investigation are ongoing and incomplete, and the Trustee reserves her right to assert additional factual allegations if and when such additional facts are discovered.

Defendant's Statement Regarding The Relevant Legal Issues

1.) Whether Gladstone can prove by the preponderance of the evidence that the conditions encountered at the project site materially differed from those set forth in the contract; that the conditions were not reasonably foreseeable based on all the information available to Tadlock at the time Tadlock submitted its bid; that Tadlock reasonably relied upon its interpretation of the contract and contract-related documents; and that as a consequence of the difference between the expected and the encountered conditions, Tadlock suffered damages.

2.) Whether Gladstone can prove by the preponderance of the evidence that the Government constructively changed the contract by delaying the performance of Tadlock, and if so, whether those delays are compensable.

3.) Whether Gladstone can prove by the preponderance of the evidence that the contract specifications were defective, and if so, whether Tadlock was damaged thereby.

4.) Whether Gladstone can prove by the preponderance of the evidence that the Government constructively changed the terms of the contract, and if so, whether Tadlock was damaged thereby.

5.) Whether the bilateral contract modifications containing a waiver and release clause constitute an accord and satisfaction barring Gladstone's recovery of additional costs attributable to the facts and circumstances giving rise to the modifications.

6.) Whether Gladstone's proposal and supporting documentation adequately support, pursuant to the contract and the cost principles of FAR Part 31, the amount sought.

Defendant's Statement Regarding The Relevant Factual Issues

1.) Whether there were unforeseen or undisclosed obstacles, and, if so, whether Tadlock's ability to perform was thereby impeded.

2.) Whether there were discrepancies between the contract specifications and the architectural drawings and, if so, whether Tadlock's ability to perform was thereby impeded.

3.) Whether the number of field notices, prime cover reports, and contract modifications was in excess of what would be expected for a project of this size and nature, and, if so, whether Tadlock's ability to perform was thereby impeded.

4.) Whether the Navy delayed in responding to Field Notices and, if so, whether such delays delayed the completion of the project.

5.) Whether Tadlock failed to meet the contract schedule for reasons for which Tadlock was responsible.

6.) Whether $2,796 is an accurate daily rate.

7.) Whether the use of a daily rate is an appropriate methodology for these circumstances.

8.) Whether Tadlock has requested, in whole or in part, field office overhead or general condition costs on both a per diem and markup basis.

(i) Settlement

The parties are not currently in a position to pursue fruitful settlement discussions. The parties will, however, continue to consider the possibility of settlement, and the use of ADR,

throughout the proceedings.

(j) Trial

At this time, the parties anticipate that they will proceed to trial and that the trial will last from five to ten days. The parties agree that an expedited trial pursuant to paragraph 6(b) of Appendix G is not warranted.

(k) Electronic Filing

The parties are not aware of any special issues regarding electronic case management needs.

(l) Additional Information

The parties request that the trial in this case take place in San Diego, California.

The parties are unaware of any other matters which should be brought to the Court's attention at this time.

Discovery Schedule

1. Exchange of documents by March 1, 2005

2. Completion of fact witness discovery by October 1, 2005

3. Designation of expert witnesses by January 15, 2005, and exchange of expert witness reports within 30 days of fact witness discovery being completed

4. Completion of expert witness discovery by February 15, 2006

5. Completion of all discovery by February 15, 2006

Respectfully submitted,

PETER D. KIESLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Richard J. Annen
RICHARD J. ANNEN, ESQ.
Sparber Rudolph Annen, APLC
701 B Street, Suite 1000
San Diego, CA 92101-8109
619-239-3600
619-239-5601 (Fax)

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

Attorneys for Defendant

Dated: December 21, 2004

Dated: December 21, 2004

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of December 2004 a copy of the foregoing Joint Preliminary Status Report was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the court's system.

s/ Leslie Cayer Ohta