No. 04-1145C
Judge Nancy Firestone

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

LESLIE GLADSTONE, AS TRUSTEE OF
THE WILLIAM G. TADLOCK, INC. BANKRUPTCY ESTATE,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

# DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

DEBORAH A. BYNUM
Assistant Director

LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

August 30, 2005

Attorneys for Defendant

TABLE OF CONTENTS

DEFENDANT'S BRIEF . . . . . 1

STATEMENT OF THE ISSUE . . . . . 1

Whether the bilateral contract modifications containing full releases represent an accord and satisfaction.

STATEMENT OF THE FACTS . . . . . 1

SUMMARY OF ARGUMENT . . . . . 6

ARGUMENT . . . . . 7

I. This Matter Is Appropriate For Summary Disposition . . . . . 7

II. Each Bilateral Contract Modification Containing A Full Release Constitutes An Accord And Satisfaction. . . . . . 8

CONCLUSION . . . . . 12

APPENDIX

INDEX TO APPENDIX

Contract Modifications, A00001 through A00017 . . . . . A

Tadlock's Impact Delay Cost Proposal dated February 19, 1999 . . . . . B

Tadlock's Impact Delay Cost Proposal dated March 15, 2000 . . . . . C

Gladstone's Certified Claim dated March 31, 2003 . . . . . D

Declaration of Joseph Angell . . . . . E

Declaration of Michael McGaw . . . . . F

TABLE OF AUTHORITIES

Abatement Contracting Corp. v. United States, 58 Fed. Cl. 594 (2003) . . . . . . . . . . . . . . . . . 9

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Arizona v. United States, 216 Ct. Cl. 221, 575 F.2d 855 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . 8

Brock & Blevins Co. v. United States, 170 Ct. Cl. 343 F.2d 951 (1965) . . . . . . . . . . . . . . . . . . 8, 9

C & H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246 (1996) . . . . . . . . . . . . . . 9

C. H. Robinson Int'l v.United States, 64 Fed. Cl. 651 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

City of Oxnard v. United States, 851 F.2d 344 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . 8

City of Tacoma v. United States, 38 Fed. Cl. 582 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Community Heating & Plumbing Co. v. Kelso, 987 F.2d 1575 (Fed. Cir. 1993) . . . . . . . . . . 8, 10

Cray Research, Inc. v. United States, 44 Fed. Cl. 327 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fortec Constructors v. United States, 760 F.2d 1288 (Fed. Cir. 1985) . . . . . . . . . . . . . . . . . . . . . 8

Gaston & Assocs., Inc. v. United States, 27 Fed. Cl. 243 (1992) . . . . . . . . . . . . . . . . . . . . . . . . 8

Gould, Inc. v. United States, 935 F.2d 1271 (Fed. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991) . . . . . . . . . . . . . . . . . . 7

RE, Inc. v. United States, 142 F.3d 1274 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Jackson Constr. Co. v. United States, 62 Fed. Cl. 84 (2004) . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12

Kanag'Iq Constr. Co. v. United States, 51 Fed. Cl. 38 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Massachusetts Bay Transp. Auth. v. United States, 129 F.3d 1226 (Fed. Cir. 1997) . . . . . . . . . . 8

John Massman Contracting Co. v. United States, 23 Cl. Ct. 24, 29 (1991) . . . . . . . . . . . . . . . . 10

McAbee Constr., Inc. v. United States, 97 F.3d 1431 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . 7

National Steel & Shipbuilding Co. v. United States, 49 Fed. Cl. 579 (2001) . . . . . . . . . . . . . . . 10

R. P. Richards Constr. Co. v. United States, 51 Fed. Cl. 116 (2001) . . . . . . . . . . . . . . . . . . 10, 11

Safeco Credit v. United States, 44 Fed. Cl. 406 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

Smelser v. United States, 53 Fed. Cl. 530 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Starflight Boats v. United States, 48 Fed. Cl. 592 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . 7

Unicon Mgmt. Corp. v. United States, 179 Ct. Cl. 534, 537-38 (1967) . . . . . . . . . . . . . . . . . . . . . 8

United States v. Johnson Controls, Inc., 713 F.2d 1541 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . 8

Varilease Tech. Group, Inc. v. United States, 289 F.3d 795 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . 7

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LESLIE GLADSTONE, AS TRUSTEE OF THE WILLIAM G. TADLOCK, INC. BANKRUPTCY ESTATE, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 04-1145C (Judge Nancy Firestone) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully requests the Court to enter partial summary judgment in favor of defendant because there is no material issue of disputed fact and defendant is entitled to judgment as a matter of law. In support of this motion, we rely upon the complaint; the proposed findings of fact; the declarations of Joseph Angell, and Michael McGaw, the exhibits contained in the appendix; and the following brief.

STATEMENT OF THE ISSUE

Whether each bilateral contract modification containing a full release constitutes an accord and satisfaction.

STATEMENT OF THE FACTS

On February 5, 1998, the contract that is the subject matter of this dispute was awarded to William G. Tadlock, Inc. ("Tadlock"), in the amount of $6,008,622, by Southwest Division, Naval Facilities Engineering Command in San Diego, California. Complaint ("Comp.") ¶ 7. The contract was for the construction of an enlisted dining facility at the Marine Corps Air Station ("MCAS"), Miramar, San Diego, California. Comp. ¶ 5.

Construction was to commence on February 20, 1998, and be completed by March 22, 1999. Comp. ¶8.

Between May 1998 and February 1999, the sixteen contract modifications that are the

subject of this motion were issued.[1] Appendix ("App."), Exhibit ("Exh.") A.

Modification A00002, executed by Tadlock and the Government on May 15, 1998, required that the Government pay Tadlock half of the costs it incurred in connection with the initial partnering meeting. App., Exh. A, Modification A00002. The contract price was increased by $1,608.65 to $6,010,230.65; the contract completion date remained unchanged. Id. The modification included the following release (hereinafter referred to as "a full release"):

> CONTRACTOR'S STATEMENT OF RELEASE
>
> Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised.

Id.

Modification A00003, executed by Tadlock and the Government on August 7, 1998, and August 8, 1998, respectively, increased the scope of work by adding a second opening in the service counter; a custom stainless steel worktable; a custom wall shelf; sneeze guard, shelf, seven heat lamps; and a hot food box. App., Exh. A, Modification A00003. The modification also deleted the following items from the scope of work: hot wells; prep tables; wall shelves; donut fryer; hood; fire suppression; and yogurt machines. Id. The contract price was reduced by $18,656.00 to $5,991,574.65; the contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00004, executed by Tadlock and the Government on August 14, 1998, and August 17, 1998, respectively, increased the scope of work by requiring that Tadlock raise the storm drain, install a storm drain line that was not shown on the contract drawing; and to enlarge, reinforce, and add a heavy duty cover for a manhole. App., Exh. A. The modification increased

[1] Modification A00001, issued unilaterally by the Government, incorporated a U.S. Department of Labor Wage Decision into the contract. Comp. ¶9. App., Exh. A. Neither the contract price nor the period of performance were affected by this modification. Id.

the contract price by $10,255.00 to $6,001,829.65; the completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00005, executed by Tadlock and the Government on August 24, 1998, and August 26, 1998, respectively, increased the scope of work by requiring that Tadlock install two valves/boxes in the existing water line. App., Exh. 1A Modification A00005. The contract price was increased by $3,798.00 to $6,005,627.65; the completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00006, executed by Tadlock and the Government on August 24, 1998, and August 26, 1998, respectively, required that the Government reimburse Tadlock for half the costs incurred by Tadlock in connection with the follow-on partnering workshop. Id. The contract price was increased by $119.72 to $6,005,747.37; the contract completion date remained unchanged. Id. The modification included a full release. Id.

Modification A00007, executed by Tadlock and the Government on August 24, 1998, and August 26, 1998, respectively, increased the scope of work by requiring that Tadlock add a stainless steel heat exchanger and burners. App., Exh. A, Modification A00007. The contract price was increased by $4,674.00 to $6,010,421.37; the contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00008, executed by Tadlock and the Government on August 26, 1998, increased the scope of work by requiring that Tadlock tunnel under the existing ductbank that interfered with the utilities and building footings. App., Exh. A, Modification A00008. The modification increased the price by $3,187.00 to $6,013,608.37. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by

the modification. Id.

Modification A00009, executed by Tadlock and the Government on September 21, 1998, increased the scope of work by requiring that Tadlock remove cemented material that was not indicated on the boring logs. App., Exh. A, Modification A00009. The modification increased the contract price by $34,387.00 to $6,047,995.37; the contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00010, executed by Tadlock and the Government on September 29, 1998, increased the scope of work by requiring that Tadlock reroute the duct bank; remove additional asphalt; add a duplex outlet and wiring for the receiving scale; and change the wiring and circuit breakers for the refrigeration system. App., Exh. A, Modification A00010. The contract price was increased by $7,023.00 to $6,055,018.37. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00011, executed by Tadlock and the Government on October 15, 1998, required that Tadlock install an additional 70 feet of 2-2 inch conduit; remove the hard pan and utilities discovered during excavation along Loadstar, Polaris, and Jupiter roads, and at the manholes; add wiring boxes and conduit; excavate and place slurry into footings, haul dirt from the footings; and change the lobby lights. App., Exh. A, Modification A00011. The contract price was increased by $83,143.00 to $6,138,161.37. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00012, executed by Tadlock and the Government on October 15, 1998, increased the scope of work by requiring that Tadlock add 48 strands of fiber cable. App., Exh.

A, Modification A00012. The contract price was increased by $25,170.00 to $6,163,331.37. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00013, executed by Tadlock and the Government on October 15, 1998, increased the scope of work by requiring that Tadlock add control joints to the concrete masonry units. App., Exh. A, Modification A00013. The contract price was increased by $19,858.00 to $6,183,189.37. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00014, executed by Tadlock and the Government on November 4, 1998, increased the scope of work by requiring that Tadlock repair the 8" water line and encase the shallow lines in concrete. App., Exh. A, Modification A00014. The contract price was increased by $6,091.00 to $6,189,280.37. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00015, executed by Tadlock and the Government on December 9, 1998, increased the scope of work by requiring that Tadlock remove debris left on its laydown site by others. App., Exh. A, Modification A00015. The contract price was increased by $7,244.00 to $6,196,524.37. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

Modification A00016, executed by Tadlock and the Government on December 29, 1998, reimbursed Tadlock for one-half the cost of the follow on partnering workshop. App., Exh. A, Modification A00016. The contract price was increased by $734.36 to $6,197,258.73. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id.

Modification A00017, executed by Tadlock and the Government on February 18, 1999,

and February 22, 1999, respectively, increased the scope of work by requiring that Tadlock bring in additional soil to meet the required building pad elevations. App., Exh. A, Modification A00017. The contract price was increased by $15,000 to a total price of $6,212,258.73. Id. The contract completion date remained unchanged. Id. The modification included a full release. Id. In addition, the modification stated that it constituted a "complete equitable adjustment" for the work covered by the modification. Id.

On February 19, 1999, only one day after Tadlock had executed Modification A00017, the last modification that is the subject matter of this motion, Tadlock submitted a cost proposal for $320,202, titled "Impact Delay Costs," seeking direct and indirect costs and a contract extension of 114 days, based in part upon differing site conditions, including unknown soil conditions, underground utilities disrupting new utilities, and concrete masonry blocks expansion joints. App., Exh B.

On March 15, 2000, Tadlock submitted a revised cost proposal seeking $896,125.46, for direct and indirect costs, and a contract extension of 114 days, based in part upon differing site conditions, including unknown soil conditions, underground utilities disrupting new utilities, and concrete masonry blocks expansion joints. App., Exh C.

On July 31, 2001, Tadlock filed a petition for bankruptcy. App., Exh. D. On March 13, 2001, Leslie Gladstone was appointed the trustee for the William G. Tadlock, Inc., bankruptcy estate. Id.

On March 31, 2003, Gladstone submitted a certified claim seeking $888,701.66, and a 114 day extension of the contract completion date. Id.

On July 13, 2004, Gladstone filed the complaint in this matter.

## SUMMARY OF THE ARGUMENT

Each of the bilateral contract modifications containing a full release constitute an accord and satisfaction. To the extent that plaintiff seeks damages for the work covered by those modifications, judgment should be entered for defendant.

ARGUMENT

I. This Matter Is Appropriate For Summary Disposition

Summary judgment is appropriate where there are no genuine issues of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). It is a "salutary method of disposition designed 'to secure the just, speedy, and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). As the court of appeals emphasized in Sweats Fashions: "the burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact . . . ." 833 F.2d at 1563. Rather, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case." Id. (emphasis omitted) (quoting Celotex Corp., 477 U.S. at 325). Thus, where the non-moving party fails to make a sufficient showing as to the existence of an essential element for which it bears the burden of proof, summary judgment is appropriate. Celotex Corp., 477 U.S. at 322-23.

Contract interpretation is a question of law that is generally resolvable by summary judgment. Smelser v. United States, 53 Fed. Cl. 530, 539 (2002) (citing Varilease Tech. Group, Inc. v. United States, 289 F.3d 795, 798 (Fed. Cir. 2002)). One begins by looking to the plain language of the agreement. Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991); Cray Research, Inc. v. United States, 44 Fed. Cl. 327, 329 (1999). The Court's first responsibility when construing a disputed contractual provision is to ascertain analytically whether the meaning of the disputed contract provision is plain from the language or whether an ambiguity exists. McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996) ("We begin with the plain language . . . ."); accord Gresham, Smith & Partners v. United States, 24 Cl. Ct. 796, 802 (1991). When the provisions of a contract are clear, "the court may not resort to extrinsic evidence to interpret them." HRE, Inc. v. United States, 142 F.3d 1274, 1276 (Fed. Cir. 1998) (quoting McAbee Constr., 97 F.3d at 1435).

Contract provisions must be construed so as to effectuate the spirit and purpose of the

contract. Smelser, 53 Fed. Cl. at 539 (citing Gould, Inc., 935 F.2d at 1274). This is accomplished by construing a contract "as a whole" to harmonize all its provisions; an interpretation that would isolate a term from the balance of the contract is not preferred. Smelser, 53 Fed. Cl. at 539; Gaston & Assocs., Inc. v. United States, 27 Fed. Cl. 243, 249, n.7 (1992) (citing Unicon Mgmt. Corp. v. United States, 179 Ct. Cl. 534, 537-38 (1967)). Further, an interpretation of a contract that "gives a reasonable meaning to all parts will be preferred to one which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless, superfluous, or achieves a weird and whimsical result." Arizona v. United States, 216 Ct. Cl. 221, 235-36, 575 F.2d 855, 863 (1978); See also Fortec Constructors v. United States, 760 F.2d 1288, 1292 (Fed. Cir. 1985); United States v. Johnson Controls, Inc., 713 F.2d 1541, 1555 (Fed. Cir. 1983). "No contract provision can be ignored." Massachusetts Bay Transp. Auth. v. United States, 129 F.3d 1226, 1231 (Fed. Cir. 1997).

Contract interpretation calls for an objective test, with the standard being what a similarly situated, reasonably prudent contractor would have understood the contract language to mean, not what the drafter or any other party subjectively intended the contract to mean. City of Tacoma v. United States, 38 Fed. Cl. 582, 588 (1997) (citing City of Oxnard v. United States, 851 F.2d 344, 347 (Fed. Cir. 1988)).

## II. Each Bilateral Contract Modification Containing A Full Release Constitutes An Accord And Satisfaction.

Accord and satisfaction is an affirmative defense for which the defendant holds the burden of persuasion. RCFC 8(c); W & F Bldg. Maint. Co. v. United States, 56 Fed. Cl. 62, 66 (2003). Claims are discharged by accord and satisfaction when “some performance different from that which was claimed as due is rendered and such substituted performance is accepted by the claimant as full satisfaction of his claim.” Community Heating & Plumbing Co. v. Kelso, 987 F.2d 1575, 1581 (Fed. Cir. 1993) (citing Brock & Blevins Co. v. United States, 170 Ct. Cl. 52, 58-59, 343 F.2d 951, 955 (1965)). For the government to prove that a modification is an accord and that the subsequent performance was the satisfaction, a court must find four essential

elements: 1) proper subject matter; 2) competent parties; 3) a meeting of the minds; and 4) consideration. Kanag'Iq Constr. Co. v. United States, 51 Fed. Cl. 38, 46 (2001) (quoting Brock & Blevins, 170 Ct. Cl. at 59, 343 F.2d at 955); Safeco Credit v. United States, 44 Fed. Cl. 406, 419 (1999). The intention of the parties is a particularly important element of an accord and satisfaction. W & F Bldg. Maint. Co., 56 Fed. Cl. at 66 (citing Tri-O, Inc. v. United States, 28 Fed. Cl. 463, 470 (1993)).

The general rule is that an executed bilateral modification with no reservation of rights qualifies as an accord and satisfaction. Starflight Boats v. United States, 48 Fed. Cl. 592, 602 (2001) (quoting C & H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246, 252 (1996)). The modification does not have to contain a release clause to be an accord and satisfaction. Jackson Constr. Co. v. United States, 62 Fed. Cl. 84, 92-93 (2004) ((“a release constitutes no condition precedent to discharge by accord and satisfaction.”) (quoting McLain Plumbing & Elec. Serv., Inc., 30 Fed. Cl. 70, 79 (1993))). But when the bilateral modification does contain a release provision, it will usually be enforced as an accord and satisfaction unless the release is ambiguous or limited. Jackson Constr. Co., 62 Fed. Cl. at 92. A bilateral contract modification should not be interpreted to reserve rights or claims for damages in connection with the contract modification unless the reservation is precisely expressed in the contract modification. Starflight Boats, 48 Fed. Cl. at 602.

According to the parol evidence rule, a party is not permitted to introduce extrinsic evidence to change the terms of an unambiguous contract. Kanag'Iq Constr. Co., 51 Fed. Cl. at 47. Thus, when a bilateral modification includes an express release provision, the contractor is barred from introducing other evidence to try to narrow the scope of the release. Id. As this Court has made clear, “[a] contractor who executes an unconditional general release and fails to exercise his right to reserve claims is barred from maintaining a suit for damages or additional compensation under the contract based on events that occurred prior to the execution of the release.” Abatement Contracting Corp. v. United States, 58 Fed. Cl. 594, 611 (2003). A plaintiff's allegation that it did not intend to waive claims in signing the modification is not

sufficient to stave off summary judgment for the government. Safeco Credit, 44 Fed. Cl. at 420.

As stated above, two of the elements for accord and satisfaction are proper subject matter and a meeting of the minds. These elements are connected – to have a meeting of the minds, the parties must have intended the same subject matter to be covered in the contract. See W & F Bldg. Maint. Co., 56 Fed. Cl. at 67 n.16. The intent of the parties is decisive on the question of whether or not there was a meeting of the minds, with the modification itself being the best evidence of intent. Safeco Credit, 44 Fed Cl. at 419. But the behavior of the parties after signing the modification can be relevant to determining intent. For example, if the government continues to consider, negotiate, and audit the plaintiff's claim for years after the execution of the contract modification, the government's conduct may undermine the inference that the parties intended for the modification to be an accord and satisfaction.[2] See Community Heating, 987 F.2d at 1581. On the other hand, if the parties sign several bilateral modifications containing release clauses, and the plaintiff waits until a later modification to start challenging the release language, then this makes it more likely that the parties had a meeting of the minds on the release language of the earlier modifications. See John Massman Contracting Co. v. United States, 23 Cl. Ct. 24, 29 (1991); cf. Jackson Constr. Co., 62 Fed. Cl. at 93-94.

The decision in R. P. Richards Constr. Co. v. United States, 51 Fed. Cl. 116 (2001) is instructive. The contractor there sought additional compensation for asphalt repairs. R. P. Richards, 51 Fed. Cl. at 117. The bilateral contract modification covering the work at issue contained a release provision that is identical to the release in this case:

> Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised.

R. P. Richards, 51 Fed. Cl. at 117. See also, App., Exh. A, Modifications A00002 through

---

[2] Not all post-modification discussions of the claim will defeat the assertion of the accord and satisfaction defense; the relevance of the discussions depends on what they show about the parties' intent at the time of entering the modifications. National Steel & Shipbuilding Co. v. United States, 49 Fed. Cl. 579, 594 (2001).

A00017.

The court in R. P. Richards Constr. Co. held that the modification constituted a valid accord and satisfaction. R. P. Richards Constr. Co, 51 Fed. Cl, at 116. The court further held that although the modification's reference to "quantities" was ambiguous, the contractor's claim was covered by the modification and the government was released from liability for any increased costs incurred by the plaintiff. Id. at 123.

Here, each of the bilateral contract modifications, that is, modifications A00002 through A00017, constitutes a valid accord and satisfaction. Each of these modifications contains the same release language that barred the plaintiff's claims in R. P. Richards, and it should likewise bar plaintiff's claims here.

Moreover, Tadlock did not assert its delay claim based upon the increased scope of work covered by the bilateral contract modifications containing a full release until after Tadlock had executed all of the modifications at issue. App., Exh. A. Moreover, the Government did not continued to consider, negotiate, and make payment on plaintiff's claim for additional damages. See Declarations of Joseph Angell and Michael McGaw. App. Exhs. E and F, respectively.

If Tadlock intended to assert a claim for delay damages based upon an increase in scope of work, Tadlock should not have executed contract modifications with general releases covering that work. A contractor like Tadlock that signs unconditional general releases and fails to reserve its rights is barred from bringing claims for damages or additional compensation based on events that occurred prior to the execution of the releases.

Defendant is unaware of any allegations or evidence that the remaining two elements for a valid accord and satisfaction – competent parties and consideration – are at issue. There is no evidence that Tadlock was not competent to execute the modifications at issue or that there was no consideration upon which that execution was based.. Each modification represents a bargained-for exchange in which the Government promised to pay money in return for both Tadlock's work and Tadlock's relinquishing of its rights to bring claims concerning the subject matter of the modification. App., Exh. A.

Defendant also acknowledges that an accord and satisfaction – like other contracts – may be set aside in whole or in part by the court in the event of mutual mistake, supervening illegality, frustration of purpose, or other similar contract exceptions. C. H. Robinson Int'l v.United States, 64 Fed. Cl. 651, 660 (2005); see also Jackson Constr. Co., 62 Fed. Cl. at 93. Defendant, however, is unaware of any allegations or evidence that would support a finding that the accord and satisfaction at issue here be set aside for any of these reasons.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant partial summary judgment in its favor with respect to the applicability of clause limiting overhead.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

August 30, 2005

Attorneys for Defendant