**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **LESLIE T. GLADSTONE, AS TRUSTEE OF THE WILLIAM G. TADLOCK, INC. BANKRUPTCY ESTATE,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | No. 04-1145C<br>(Judge Nancy B. Firestone)<br>(ADR Senior Judge Bruggink) |
| **UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

# Plaintiff's Memorandum of Points and Authorities In Opposition to Defendant's Motion for Leave to File an Amended Answer to Complaint

# Table of Contents

Page

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Issue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

1. Tadlock contracts with the Government to build a dining facility. . . . . . . . . . . . . . . . . . . 3
2. Tadlock immediately encounters unforeseen obstacles that impede construction. . . . . . . 3
3. Tadlock files its claim for Impact Delay Damages. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
4. The Government Negotiates its Liquidated Damages Claim through 1999. . . . . . . . . . . 4
5. The Government continues to assert its claim for liquidated damages during 2000. . . . . 6
6. The Government asserts conflicting claims for liquidated damages in 2001 and 2002. . . 7
7. The Government's Liquidated Damages Claim arose more than six years ago . . . . . . . . 8

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

1. The Government fails to explain its delay in asserting the proposed counterclaim. . . . . . 8

2. Allowing the Government to file the omitted counterclaim would be futile . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# Table of Authorities

Page

## Cases

*Architectural Coatings Associates, LP v. Applied Coatings International, Inc.*
103 F.R.D. 442 (E.D. Penn. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Barrett Refining Corp. v. U.S.*
42 Fed. Cl. 128, 133, n. 16 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Health Corp. of America, Inc. v. New Jersey Dental Ass'n*
77 F.R.D. 488, 492(D. N.J. 1978) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Joseph Morton Co., Inc. v. U.S.*
3 Cl. Ct. 120, 122 (1983) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Preferred Meal Systems v. Save More Foods, Inc.*
129 F.R.D. 11, 12 (D.C. 1990) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Ralston-Purina Co. v. Bertie*
541 F.2d 1363, 1367 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . 9

*Resorts and Motel Advancement Development Agency, LTD v. Sloan*
160 F.R.D. 449, 451 (S.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . 11

*Rohner, Gehrig & Co. v. Capital City Bank*
655 F.2d 571, 576 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . 9

## Statutes

11 U.S.C. § 362(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . 11

## Rules

R. OF U.S. CT. FED. CL. 13(f) . . . . . . . . . . . . . . . . . . . . . . . . 8

# Issue

This case arises out of the Government's failure to adequately compensate plaintiff William G. Tadlock, Inc. ("Tadlock"), a commercial construction contractor, for delay damages caused by differing site conditions and the Government's defective designs. In response to the Trustee's claim for delay damages, the Government now seeks to recover liquidated damages for the delay from Tadlock's bankruptcy estate. Although the project was completed over six years ago, and Tadlock's complaint was filed over fourteen months ago, the Government has never made any formal demand before this court for payment of these damages. But now the Government seeks to amend its answer to add an omitted counterclaim, without offering any explanation for its failure to timely assert the claim. The Trustee opposes the Government's motion to add an omitted counterclaim, raising the following issues for the court:

- **Oversight, inadvertence, or excusable neglect.** Under Rules of the United States Court of Federal Claims, Rule 13(f) a defendant may seek leave of court amend its answer to add an omitted counterclaim when the defendant failed to plead the counterclaim with its initial answer through oversight, inadvertence, or excusable neglect. Here, the Government offers no explanation for its failure to assert its proposed counterclaim when it initially answered the Trustee's complaint. Should the Government's motion to add an omitted counterclaim be denied?

- **Futility of proposed amendment.** Courts should deny leave to amend when the proposed amendment would be futile. Here, the Government's proposed counterclaim is prohibited by the automatic stay provisions of the Bankruptcy Code. Should the court deny the Government's motion to add a futile counterclaim?

# Procedural History

In 1998, Tadlock entered into a contract with the Navy to construct an enlisted dining facility at the Miramar Marine Corps Air Station in San Diego, California. Construction was completed, but 107 days later than originally scheduled. On February 19, 1999, Tadlock filed its Impact Delay Damages claim with the Government. Tadlock's Impact Delay Damages Claim remains the primary

damages issue before this court. The Government responded at that time with its argument that Tadlock, instead, owes liquidated damages to the Government for the 107 days of construction delay.

Extensive negotiations as to delay damages and responsibility for delay ensued, to no avail. Tadlock was ultimately forced to file bankruptcy. The Bankruptcy Trustee of Tadlock's Bankruptcy Estate (the "Trustee"), who is the plaintiff in this litigation, filed a certified claim for $888,701.66 with the Government's Contracting Officer on March 13, 2003. Further negotiations between the Trustee and the Government failed again to produce a resolution, and the government failed to serve any response whatsoever to the Trustee's certified claim.

The Trustee ultimately filed this action on July 13, 2004. Having requested and received an extension to serve responsive pleadings, the Government served its Answer on November 12, 2004. The Government's Answer set forth no counterclaim.

Discovery proceeded, and both sides requested and produced documents. The parties agreed to schedule three days of face-to-face settlement negotiations and participated in those negotiations in May 2005. Those negotiations again failed to produce a settlement. Discovery was set to close on October 3, 2005, but the Government requested and received an extension of discovery until January 15, 2006, to complete depositions that are now scheduled in December 2005. The Trustee agreed not to oppose the Government's motion for extension of discovery and served written discovery in September, 2005. Exchange of expert reports is scheduled for November 3, 2005, and expert discovery is to conclude by February 15, 2006.

On July 2, 2005– *two years and four months* after the Trustee served her certified claim, and nearly eight months after the Government filed its Answer in this litigation – the Government's contracting officer served a "Final Decision" on the Trustee's certified claim, asserting that the Government has a right to collect $282,824 in liquidated damages.

On September 17, 2005, with discovery coming to a close, the Government filed this Motion for

Leave to file an Amended Answer to Complaint. But the Government's proposed Amended Answer addressed in this motion includes an affirmative Counterclaim, requesting an award of the liquidated damages that the Government originally contended was owed by Tadlock. The Trustee contends that this untimely attempt to file an affirmative counterclaim is improper under controlling statute, and that the proposed counterclaim is barred by the Automatic Stay imposed by the bankruptcy court upon Tadlock's filing for bankruptcy. The Government's motion must therefore be denied.

## Summary of Facts

### 1. Tadlock contracts with the Government to build a dining facility.

In February 1998, Tadlock and the Government entered into Contract No.N68711-94-C-1754, to to construct an enlisted dining facility at the Miramar Marine Corps Air Station in San Diego, California (the "Contract"). The Contract was initially scheduled to be completed by March 22, 1999.

### 2. Tadlock immediately encounters unforeseen obstacles that impede construction.

Tadlock initiated construction activities in February 1998. Almost immediately, Tadlock began to encounter significant obstacles impeding the progress of construction. The Trustee has outlined the substance of these obstacles in her Opposition to the Government's Partial Motion for Summary Judgment which is currently pending before this court.[1]

/ / /

/ / /

/ / /

---

[1] The Court is requested to take judicial notice of the Plaintiff's Proposed Findings of Fact, and the supporting declarations in support thereof, filed in support of the Plaintiff's Opposition to the Government's pending Motion for Partial Summary Adjudication.

### 3. Tadlock files its claim for Impact Delay Damages.

On February 19, 1999, Tadlock filed its Impact Delay Damages claim with the Government.[2] Tadlock's Impact Delay Damages Claim asserted that the Government owed Tadlock a total of $320,202 for damages arising out of the construction delay resulting from these obstacles impeding Tadlock's completion of construction. Tadlock's Impact Delay Damages claim included a request for time extension of 114 days to the construction completion schedule, and for extended overhead at the rate of $2,796 per day.

### 4. The Government Negotiates its Liquidated Damages Claim through 1999.

Starting immediately upon Tadlock's submittal of its Impact Delay Damages claim on February 19, 1999, the Government began to negotiate its claim for liquidated damages against Tadlock's Impact Delay Damages claim. In a letter to Tadlock dated April 28, 1999, Steven K. Revelas, the Government's Project Manager and the Assistant Resident Officer in Charge of Construction, confirmed the Government's ongoing review of Tadlock's Impact Delay Costs and describes considerations that the Government was making "for determining time or money impacts to the contract."[3] In a followup letter dated June 1, 1999, Lt. Revelas again addressed Tadlock's Impact Delay Costs proposal in light of the "various unforseen conditions and design omissions" that it addresses. Lt. Revelas then concluded,

> Based on our analysis, you are relieved of liquidated damages through 20 April 1999.[4]

///

///

---

[2] *See* Exhibits "A,""B," "C," "D," "E"

[3] Exhibit "A"

[4] Exhibit "B"

An August 17, 1999 letter addressed again to Tadlock, from K. Valentine, Contracting Officer for the Government, referenced an agreement between Tadlock and the Government to address time and delay impacts to the subject project. The letter outlines communications as to the time and delay impact negotiations that occurred in April, June, July and August 1999, and referenced an effort:

> [By] our team to conduct a complete review of the daily reports in order to define the impact of changed conditions. This review was completed on 28 April [1999].[5]

Ms. Valentine concluded by requesting a "mutually acceptable meeting date and time" when "you would be prepared to resume negotiations.[6]

In a Memorandum to file dated 7 December 1999, Lt. Revelas outlined discussions as to:

> Tadlock's "time delay proposal" and the Government's coordinated analysis of the project to arrive at a number of compensable days (as well as a number of days of liquidated damages, as applicable.)[7]

On 27 December 1999, Lt. Revelas prepared a detailed three page, single-spaced Memorandum to File, which by its own terms is defined as a documentation of a schedule analysis that Lt. Revelas had compiled the prior Spring (1999). In this Memorandum, Lt. Revelas outlines the discussions and negotiations on Tadlock's Impact Delay Damages claim, and the Government's responsive bargaining for liquidated damages, that had transpired between Tadlock and the Government between November 1998 and December 1999. Lt. Revelas begins by describing a meeting he attended on 12 November, 1998 convened by his predecessor Michael McGaw, to discuss the delays to the project, and confirms Tadlock's position that "they could not yet determine the time impact to the project." Lt. Revelas reports that:

/ / /

---

[5] Exhibit "C"

[6] *Id.*

[7] Exhibit "D"

> In January of 1999, I insisted that all modifications made in 1998 be resolved with respect to time. The resolution of time had been discussed during the partnering workshop on 8 December of 1998 ... WGT [Tadlock] agreed to provide a full impact schedule proposal on 1 February [1999]. WGT was subsequently granted an extension to 19 February in order to submit their time proposal. Their proposal was analyzed by Mike McGaw, Bruce Lyon (scheduler for DMJM), and myself over the enduing weeks. . . . I held meetings with WGT's Project Manager, Steve Tadlock, through early August to try to resolve our differences on their time proposal.[8]

Lt. Revelas concludes that the Memorandum to File "should provide ample information for my successor to defend the government's position in this contentious matter."[9]

After outlining the negotiations on time impact and liquidated damages conducted between Tadlock and the Government in 1998 and 1999, Lt. Revelas recommends that the Government pay Tadlock the total amount due and owing of $147,253, ***including the offset for liquidated damages***, calculated as follows:

> The total government impact from the items discussed above (i.e., since November 1998) is 74 calendar days... Liquidated damages . . . for the 31 days between 7 June and the acceptance of the facility on 8 July . . . should be assessed to William G. Tadlock, Inc.
>
> . . .
>
> $112,000 has been withheld pending resolution of the contract delays . . . Considering the liquidated damages and extended overhead due each party to the contract, the government should approve a final invoice of $35,253 and release the $112,000 retention. . . . [10]

## 5. The Government continues to assert its claim for liquidated damages during 2000.

On February 29, 2000, Joseph A. Angell II, Lt. Revelas' successor, sent Tadlock another detailed, four page, single-spaced letter in response to a renewed demand submitted by Tadlock's counsel on

[8] Exhibit "E", p.1

[9] *Id.*

[10] Exhibit "E", p. 3.

February 1, 2000.[11] In his February 29, 2000 letter, Lt. Angell confirms that :

> The time or delay issue is the largest and most controversial item still outstanding on this contract . . . Our analysis is based on your February 1999 schedule that was submitted with your proposal for time and money for delays."[12]

Lt. Angell proceeds to quote the analysis of Lt. Revelas, lifted directly from Lt. Revelas' December 27, 1999 Memorandum to File.[13] Lt. Angell, however, fails to acknowledge Lt. Revelas' concession of the Government's responsibility for concurrent delays.

## 6. The Government asserts conflicting claims for liquidated damages in 2001 and 2002.

The Government never followed Lt. Revelas' recommendation and continued to bargain. On May 2, 2001, Lt. Angell issued a modification of contract reducing the contract price by $109,376 in liquidated damages, asserting that the contract completion date remains March 23, 1999.[14] The Government again failed to acknowledge Lt. Revelas' previous concessions of responsibility for contract delays.

On January 26, 2002, Paul J. Kennedy, special assistant for claims, sent a letter to Tadlock demanding $282,823 for payment of liquidated damages in excess of the amount assessed to date.[15] This letter now claimed that the record supports no excusable delay that would mitigate the late completion of contract work. The Government now contended that it is appropriate to assess

---

[11] Exhibit "F"

[12] *Ibid.*, p. 1

[13] Beginning with the third paragraph of page 1 and continuing through the first full paragraph on page 3, Lt. Angell's 29 February 2000 letter tracks the text from page 1, paragraph 4 through the top of page 3 of Lt. Revelas' December 27, 1999 Memorandum almost verbatim. The primary change made by Lt. Angell is his omission of both Lt. Revelas' conclusion, and Lt. Revelas' recommendation that Tadlock be paid.

[14] Exhibit "G"

[15] Exhibit "H"

liquidated damages for the time period from March 24, 1999 to and including July 8, 1999, totaling 106 calendar days at the contractually established rate of $3,700 per day. The Government once again failed to acknowledge its prior admissions of responsibility for delays.

### 7. The Government's Liquidated Damages Claim arose more than six years ago.

The Government acknowledged its potential claim for liquidated damages already in November 1998. The Government negotiated Tadlock's claims for time and impact, in light of its potential counterclaim for liquidated damages, throughout 1999 and 2000, and into 2001 and 2002.

## Argument

### 1. The Government fails to explain its delay in asserting the proposed counterclaim.

The Government seeks leave to amend its answer under Rules of the United States Court of Federal Claims, Rule 15(a). But a defendant's right to amend its answer to include a counterclaim that was omitted when the defendant filed its initial answer is not governed by Rule 15(a).[16] Instead, when a defendant fails to include a counterclaim that arises out of the same transaction as plaintiff's claims with the defendant's answer as required by Rules of the United States Court of Federal Claims, Rule 13(a), leave to add the counterclaim is governed by Rule 13(f), which states:

> When the defendant fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, it may by leave of court set up the counterclaim by amendment.[17]

Rule 13(f)'s allowance for amendment based on the defendant's "oversight, inadvertence, or

---

[16]*See, e.g., Architectural Coatings Associates, LP v. Applied Coatings International, Inc.*, 103 F.R.D. 442 (E.D. Penn. 1984).

[17]R. OF U.S. CT. FED. CL. 13(f).

excusable neglect,"does not allow a defendant to neglect its case and ignore deadlines imposed by the Rules.[18] So, even absent bad faith or some other dilatory motive, the defendant's failure to provide any explanation for a delay in bringing the counterclaim is sufficient reason to deny defendant's motion for leave to amend to add an omitted counterclaim.[19] For example, in *Preferred Meal Systems v. Save More Foods, Inc.*, the defendant sought leave to file an amended answer to include an omitted counterclaim twenty-nine months after the complaint was filed.[20] Although the defendant argued that the plaintiff would not be prejudiced by allowing the counterclaim, the court disagreed.[21] The court noted that allowing the defendant leave to file a counterclaim just one month before the discovery cut-off date would necessitate an extension of that date, as well as trial.[22] The court went on to reason that the defendant failed to justify the delay:

> Moreover, the defendant does not claim that he only recently discovered the factual basis for his proffered counterclaim and offers no explanation of justification whatsoever for his lengthy delay and for his failure to set up this compulsory counterclaim when he filed his Answer. "Unexcused delay, coupled with the probability that the addition of new claims would lead to a new wave of discovery, is . . . an adequate basis for denying leave to amend." [Citation.][23]

For this reason the court held that the defendant had not met the requirements of Rule 13(f), and denied the defendant's motion for leave to file an amended answer to include an omitted

---

[18] *Rohner, Gehrig & Co. v. Capital City Bank*, 655 F.2d 571, 576 (5th Cir. 1981).

[19] *Id.*; *See also, Ralston-Purina Co. v. Bertie*, 541 F.2d 1363, 1367 (9th Cir. 1976).

[20] *Preferred Meal Systems v. Save More Foods, Inc.*, 129 F.R.D. 11, 12 (D.C. 1990).

[21] *Id.* at 13.

[22] *Id.*

[23] *Id.*; *See also Health Corp. of America, Inc. v. New Jersey Dental Ass'n*, 77 F.R.D. 488, 492(D. N.J. 1978)—"The discovery of new facts is not, as defendants correctly point out, a prerequisite to the filing of an omitted counterclaim under Rule 13 but the absence of new facts is a legitimate factor in deciding a motion of this kind."

counterclaim.[24]

Here, six years after Tadlock finished the project and fourteen months after the Trustee filed her complaint, the Government seeks leave to file an omitted counterclaim, alleging that Tadlock's bankruptcy estate owes the Government liquidated delay damages under the contract. The Government offers no excuse for not asserting this counterclaim in a timely fashion when it filed its answer in November 2004, since the Government was well aware of its potential claims against Tadlock at that time. No new facts have come to light through this action that would justify the Government's delay. In fact, Government fails to offer any explanation for why this compulsory counterclaim was not asserted when it filed its original answer. Instead, the Government simply asserts that the amendment must be liberally granted and that the Trustee will not be prejudiced by allowing the Government to file its proffered counterclaim. But allowing this amendment at this point in the litigation will necessitate allowing the Trustee to conduct additional discovery, and thus delay trial.

Under these circumstances, the Government has not met the requirements of Rule 13(f). Its motion for leave to amend its answer to include the omitted counterclaim should be denied.

## 2. Allowing the Government to file the omitted counterclaim would be futile.

Not only did the Government fail to meet its burden under Rule 13(f), but its motion for leave to amend its answer to include an omitted counterclaim should also be denied because the counterclaim against Tadlock's bankruptcy estate is precluded by the automatic stay.[25]

---

[24] *Id.*

[25] Plaintiff's counsel has requested that defendant withdraw its motion on the basis of the automatic stay. *See* Exhibit "I." As of the filing of this Opposition, defendant has not responded to this request.

It is well settled that when evaluating whether or not to permit a defendant to amend the answer, the court may deny leave to do so when the proposed pleading would be futile.[26] 11 U.S.C. § 362 governs the automatic stay and provides that when a debtor files a bankruptcy petition, all entities are precluded from commencing or continuing any action against the debtor:

> (a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—
>
> > (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;[27]

This provision of the Bankruptcy Code operates as a stay precluding the Government from initiating or continuing actions against a contractor who has filed for bankruptcy.[28]

Here, it is indisputable that the Government's claim against Tadlock for liquidated damages in delaying the performance of the contract existed at the time that Tadlock completed the performance of the project in 1999. After that time, Tadlock filed his bankruptcy petition, staying any claims against it, including the Government's claims for delay damages under the contract. It is equally indisputable that the Government has not sought relief from the automatic stay in the bankruptcy court, as it is required to do, before pursuing any action against the debtor. Since the automatic stay precludes the Government's action against Tadlock's bankruptcy estate, allowing the Government to amend its answer to include this counterclaim would be futile. For this reason, the Government's motion should be denied.

---

[26] *Resorts and Motel Advancement Development Agency, LTD v. Sloan*, 160 F.R.D. 449, 451 (S.D.N.Y. 1995).

[27] 11 U.S.C. § 362(a)(1).

[28] *See, e.g., Joseph Morton Co., Inc. v. U.S.*, 3 Cl. Ct. 120, 122 (1983); and *Barrett Refining Corp. v. U.S.*, 42 Fed. Cl. 128, 133, n. 16 (1998).

# Conclusion

The Government's motion for leave to file an amended answer should be denied for at least two reasons. First, the Government has failed to meet its burden under Rule 13(f) to show that its failure to timely assert its omitted counterclaim was the result of "oversight, inadvertence, or excusable neglect." Second, allowing the Government to amend would be futile since the counterclaim against Tadlock's bankruptcy estate is barred by the automatic stay.

Under these circumstances, the Government's motion for leave to amend its answer to include its omitted counterclaim should be denied.

Dated: October 4, 2005

By: /s/ Richard J. Annen

SPARBER RUDOLPH ANNEN, APLC
Richard J. Annen, Esq.
701 "B" Street, Suite 1000
San Diego, CA 92101-8109
Telephone: (619) 239-3600
Facsimile: (619) 239-5601
Email: rannen@sparberlaw.com
Attorneys for Plaintiff Leslie T. Gladstone, As Trustee of the William G. Tadlock, Inc. Bankruptcy Estate

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2005, a copy of the foregoing Plaintiff's Memorandum of Points and Authorities in Opposition to Defendant's Motion for Leave to File Amended Answer was filed electronically. I understand that notice of this filing will be sent to all parties of the record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard J. Annen