**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **LESLIE T. GLADSTONE, AS TRUSTEE OF THE WILLIAM G. TADLOCK, INC. BANKRUPTCY ESTATE,** | |
| **Plaintiff,** | |
| **vs.** | No. 04-1145C<br>(Judge Nancy B. Firestone)<br>(ADR Senior Judge Bruggink) |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

# Plaintiff's Notice of Lodgment of Exhibits in Support of Opposition to Defendant's Motion for Leave to File Amended Answer

Plaintiff, Leslie T. Gladstone, as Trustee of the William G. Tadlock, Inc. Bankruptcy Estate, hereby lodges the following exhibits in support of her Opposition to Defendant's Motion for Leave to File Amended Complaint.

1. Lodged as **Exhibit "A"** is a true and complete copy of a letter dated April 28, 1999, to Wm. G. Tadlock Incorporated from Stephen K. Revelas, Project Engineer, Department of the Navy.

2. Lodged as **Exhibit "B"** is a true and complete copy of a letter dated June 1, 1999, to Wm. G. Tadlock Incorporated from Stephen K. Revelas, Project Engineer, Department of the Navy.

3. Lodged as **Exhibit "C"** is a true and complete copy of a letter dated August 17, 1999, to Wm. G. Tadlock Incorporated from K. Valentine, Contracting Officer, Department of the Navy.

4. Lodged as **Exhibit "D"** is a true and complete copy of a Memorandum to File dated December 7, 1999, from Stephen K. Revelas, Project Engineer, Department of the Navy.

5. Lodged as **Exhibit "E"** is a true and complete copy of a Memorandum to File dated December 27, 1999, from Stephen K. Revelas, Project Engineer, Department of the Navy.

6. Lodged as **Exhibit "F"** is a true and complete copy of a letter dated February 29, 2000, to Wm. G. Tadlock Incorporated from J.A. Angell, II, Department of the Navy.

7. Lodged as **Exhibit "G"** is a true and complete copy of a Modification of Contract dated May 2, 2001.

8. Lodged as **Exhibit "H"** is a letter dated January 26, 2002 from Paul J. Kennedy, Special Assistant for Claims, to Wm. G. Tadlock Incorporated.

///

///

///

///

9. Lodged as **Exhibit "I"** is correspondence dated September 30, 2005 from Sparber Rudolph Annen, APLC, counsel for the Trustee, to Leslie G. Ohta, Esq., counsel for the Government, with exhibit.

Dated: October 4, 2005 By: /s/ Richard J. Annen

SPARBER RUDOLPH ANNEN, APLC
Richard J. Annen, Esq.
701 "B" Street, Suite 1000
San Diego, CA 92101-8109
Telephone: (619) 239-3600
Facsimile: (619) 239-5601
Email: rannen@sparberlaw.com
Attorneys for Plaintiff Leslie T. Gladstone, As Trustee of the William G. Tadlock, Inc. Bankruptcy Estate

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of October, 2005, a copy of the foregoing Plaintiff's Notice of Lodgment of Exhibits in Support of Opposition to Defendant's Motion for Leave to File Amended Complaint was filed electronically. I understand that notice of this filing will be sent to all parties of the record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Richard J. Annen

# EXHIBIT "A"

FILE

DEPARTMENT OF THE NAVY
SOUTHWEST DIVISION
RESIDENT OFFICER IN CHARGE OF CONSTRUCTION
MCAS MIRAMAR
SAN DIEGO CA 92145-5000

RECEIVED
APR 30 1999
Wm. G. TADLOCK INC.

N68711-94-C-1754
Ser 5NMO.SR/1576
28 April 1999

WM. G. TADLOCK, INCORPORATED
1565 Hillsmont Drive
El Cajon CA 92020

Subj: CONTRACT N68711-94-C-1754; ENLISTED DINING FACILITY, MARINE CORPS AIR STATION, MIRAMAR, SAN DIEGO, CA

Gentlemen:

While reviewing your proposal entitled, "Impact Delay Costs," we have found several inexplicable changes to your schedule which have extended the contract duration a total of 70 calendar days.

Logic and duration for Activity 3320 changed - 17 day impact
Logic and duration for Activity 3250 changed - 17 day impact
Logic for Activity 4020 changed - 20 day impact
Logic and duration for Activity 2995 changed - 16 day impact

Additionally, you have included the landscape maintenance period in your proposal for delay costs. Since this activity does not impact building turnover nor require Wm. G. Tadlock to remain mobilized at the site, it has been removed from consideration for determining time or money impacts to the contract.

Please provide an explanation for these changes. Include in your explanation any impact you feel the government had which may have necessitated a change in activity duration or logic.

Please contact the undersigned at (619)577-6276 if you have any questions.

Sincerely,

STEPHEN K. REVELAS
LT, CEC, USN
PROJECT ENGINEER

EXHIBIT A

EXHIBIT 'F'

# EXHIBIT "B"

RECEIVED
JUN 01 1999
Wm G. Tadlock, Inc. Job # 7848

DEPARTMENT OF THE NAVY
SOUTHWEST DIVISION
RESIDENT OFFICER IN CHARGE OF CONSTRUCTION
MCAS MIRAMAR
SAN DIEGO CA 92145-5000

N68711-94-C-1754
Ser 5NM0.SR/1577
1 June 1999

WM. G. TADLOCK, INCORPORATED
9131 Fletcher Parkway, Suite 124
La Mesa CA 91942

Subj: CONTRACT N68711-94-C-1754; ENLISTED DINING FACILITY, MARINE CORPS AIR STATION, MIRAMAR, SAN DIEGO, CA

Gentlemen:

We have not received a response to our letter dated 28 April regarding the various activity logic and duration changes on your proposal entitled, "Impact Delay Costs". We felt that a month was sufficient time for a response and therefore completed our analysis of your proposal on 28 May. We have reviewed the various unforeseen conditions and design omissions associated with the subject contract and have acknowledged some concurrent delays. Based on our analysis, you are relieved of liquidated damages through 20 April 1999. Please contact the undersigned at (619)577-6276 if you have any questions.

Sincerely,

STEPHEN K. REVELAS
LT, CEC, USN
PROJECT ENGINEER

TAD-MIRA 0850

EXHIBIT B

# EXHIBIT "C"

DEPARTMENT OF THE NAVY
SOUTHWEST DIVISION
RESIDENT OFFICER IN CHARGE OF CONSTRUCTION
MCAS MIRAMAR
SAN DIEGO CA 92145-5000

N68711-94-C-1754
Ser 5NM2.KV/1684
17 Aug 99

VIA FACSIMILE

WM. G. TADLOCK, INCORPORATED
9131 Fletcher Parkway, Ste. 124
La Mesa CA 91942

Subj: CONTRACT N68711-94-C-1754; ENLISTED DINING FACILITY, MARINE CORPS AIR STATION, MIRAMAR, SAN DIEGO, CA

Gentlemen:

Since our agreement last winter (follow up partnering and meeting of 12 January) to address time and delay impacts to the subject project, we have experienced repeated setbacks to our negotiation schedule. Your initial proposal submission was delayed 19 days due to Mr. William Tadlock's absence in the month of January. The lack of detail and backup in the initial proposal required our team to conduct a complete review of the daily reports in order to define the impact of changed conditions. This review was completed on 28 April. On that date, a letter was sent to your office asking for clarification on some of the activities of your network that had been changed. We have never received a response to our questions despite sending a letter of reminder on 1 June. On 16 June, negotiations resumed and were to continue the following week, but were canceled by Steve Tadlock due to a back injury. A letter was sent on 7 July requesting that we resume negotiations. On 23 July, Lt Revelas, Project Engineer, contacted Steve Tadlock and made arrangements for a meeting for 29 July. Meetings were conducted on 29 July and 3 August. At the conclusion of the 3 August meeting, Mr. William Tadlock agreed that his Program Manager would provide a revised proposal network on 10 August to allow our Project Engineer to review it prior to the next meeting scheduled on 13 August. To date, this data has not been received.

Additionally, the meeting scheduled for 13 August was moved to 16 August to accommodate Mr. Tadlock's request for the presence of a neutral third party. This meeting was subsequently canceled by Mr. Tadlock. In canceling the 16 August meeting, you did not provide us with a date when you would be prepared to resume negotiations. Please contact the undersigned to arrange for a mutually acceptable meeting date and time.

Sincerely,

K. Valentine
K. Valentine
Contracting Officer

Cy to:
LCDR Angell
Linda Allen
Lt Revelas

GLADSTONEII 01153

Encl 2

EXHIBIT C

# EXHIBIT "D"

7 Dec 99

MEMORANDUM TO FILE

Subj: Enlisted Dining Facility (N68711-94-C-1754) Delay Claim

1. I met with Jerry Silva (Project Manager for subject contract) of William G. Tadlock, Inc. (WGT) on Wednesday, 24 November at the Enlisted Dining Facility to discuss warranty/punch list items and we ended up discussing the time delay proposal as well. Mr. Silva felt that Bill Tadlock would allow Steve Tadlock and I to resume our coordinated analysis of the project to arrive at a number of compensable days (as well as a number of days of liquidated damages, as applicable). Mr. Silva definitely didn't feel that Bill Tadlock would settle for a no cost extension of the contract to completion. I told him I'd be back on 6 December and would call him Monday morning to get Bill's answer as to whether Steve Tadlock and I could pick up where we left off last July. I told Mr. Silva that I would need a dedicated period of time with Steve Tadlock so we could resolve the issue by Christmas. I also told him that I would get the status on the funding we had set aside in March. Mr. Silva agreed to approach Mr. Bill Tadlock on the subject of resuming the schedule analysis.
2. I called Mr. Silva Monday morning (6 December) and traded a couple of phone messages with him during the day. We finally spoke at 1545. Mr. Silva told me that he had conferred with Mr. Bill Tadlock concerning the time delay proposal. Mr. Silva stated that Mr. Tadlock was not interested in resuming a coordinated analysis of the project timeline and would be submitting a claim exceeding $1M within two weeks.

STEPHEN K. REVELAS
LT, CEC, USN
PROJECT MANAGER

Copy to:
LCDR Angell, ROICC
Linda Allen, Lead Contract Specialist
Kathy Valentine, Contract Specialist

GLADSTONEII 01154

Encl 3

EXHIBIT D

# EXHIBIT "E"

27 Dec 99

MEMORANDUM TO FILE

From: LT Stephen Revelas

Subj: MCAS Miramar Enlisted Dining Facility (EDF) Delay Claim

Contract number N68711-94-C-1754 was awarded in February of 1998 to William G. Tadlock, Inc. (WGT) in the amount of $6,008,622 to construct a new Enlisted Dining Facility at MCAS Miramar. Mr. Mike McGaw and Ms. Katherine Valentine were designated as the ROICC contracts team to administer the contract. In December of 1998, Mr. McGaw was reassigned to Southwest Division headquarters. I was appointed to replace Mr. McGaw as the Project Manager. I oversaw the daily progress of this project until its completion in July of 1999.

It was apparent during my turnover with Mr. McGaw that the project was falling behind. I attended a meeting on 12 November 1998 which had been convened by Mike to discuss the delays to the project and the multiple logic errors of the contractors CPM (see enclosure 1). The contractor dismissed the schedule as a poor management decision to subcontract its development to an independent consultant. The contractor, however, felt that the lack of a viable schedule did not have any bearing upon the lagging progress, but that the many unforeseen underground conditions had set the project behind. Despite this claim, the contractor refused to assess any time impacts associated with modifications to the contract as a result of these unforeseen conditions. The contractor stated that they could not yet determine the time impact to the project.

In January of 1999, I insisted that all modifications made in 1998 be resolved with respect to time. The resolution of time had been discussed during the partnering workshop on 8 December of 1998, but no action had been taken on the part of the contractor. WGT agreed to provide a full impact schedule proposal on 1 February. WGT was subsequently granted an extension to 19 February in order to submit their time proposal. Their proposal was analyzed by Mike McGaw, Bruce Lyon (scheduler for DMJM), and myself over the ensuing weeks. A letter was sent to WGT in April requesting additional information regarding inconsistencies with their proposed schedule. A response to those questions was never received. I held meetings with WGT's Project Manager, Steven Tadlock, through early August to try to resolve our differences on their time proposal (see enclosure 2). Despite our efforts, resolution was not reached and on 10 August, the owner of WGT stated that he would submit a claim to the government. Despite this stated intention, no claim has been submitted. However, in a telephone conversation with Jerry Silva (successor to Steve Tadlock as PM) of WGT on 6 December 1999, Mr. Silva stated that he had spoken to Bill Tadlock (WGT owner) concerning the time proposal and that Bill would be submitting the claim by the end of December (see enclosure 3). Due to my imminent transfer from the command, I have resurrected the schedule analysis of last spring and compiled the following documentation to support my analysis. This document should provide ample information for my successor to defend the government's position in this contentious matter.

The schedule submitted last February as a part of WGT's proposal for time and money on delays incurred with the construction of the dining facility was given to Bruce Lyon, the scheduler for DMJM. He ran a Claim Digger report on the schedule to see what activities had changed in duration and/or relationship from the baseline schedule (see enclosure 4). Mr. Lyon also sorted the schedule by late start (LS) and compared the LS of as-built schedule to the baseline schedule (see enclosure 5). Based on this sorting, we identified those activities that had caused delays to the project. In WGT's analysis, they had identified the civil site demolition and the lack of control joints for the masonry as the main culprits. Our analysis concurred with WGT's analysis with respect to these activities. WGT also felt that the roof penetrations for food service equipment that were not identified on the plans caused delays to the installation of the roof. Due to the fact that the installation of the roof was one of the last features of work on the baseline schedule, it did not fall on the critical path. However, the late scheduling of the roof installation on the baseline schedule was an obvious error in job sequencing. I have therefore included the roof installation in my analysis. Despite the fact that the placement of the slab-on-grade did not reveal itself to be a driving factor, I have also included it in my analysis due to the many RFI's regarding utilities for various food service components.



EXHIBIT E

An analysis of the civil site demolition revealed that there were several issues of unforeseen conditions associated with the underground work for the project. Hard digging and working around existing utilities which were not shown on the plans accounted for 7 workdays (24 Mar; 13, 14, 28 April; 12-14 May; 10 June). The building footings had to be excavated deeper in order to be on formational material. This work accounted for 3 workdays (12, 15, 24 June). Due to clayey soils, additional export and import was required for the building pad, accounting for 2 additional workdays (3, 4 June). Due to delays by the contractor in submittals for section 02220 Demolition and Removal and section 02301 Earthwork for Structures and Pavements, approval for these features of work did not occur until 23 April. Therefore, three workdays are concurrent and the balance (seven) is attributed to the government. This translates into 9 calendar days.

Once the building footings were poured, the masonry walls could commence. The contractor points at the lack of CMU control joints as a delay on the project. The baseline schedule has a LS of 26 May. Actual start (AS) for the masonry walls was 19 Jun for a difference of 24 calendar days. The walls were completed on 16 August for a duration of 58 calendar days. With an original duration of 42 calendar days, the difference is 16 calendar days. Considering the fact that there were routinely only 3 masons on site and the fact that no masons were present on 10 August, the longer duration is not surprising. Although the additional layout for control joints was not time consuming, an additional 10 workdays is allotted for this additional work and coordination. The 10 workdays translate into 14 calendar days.

The next major feature of work, the placing of the slab-on-grade was dependent upon all of the underground work and the underslab plumbing and electrical. There were several RFI's generated concerning the underslab utilities that had to be resolved prior to the placement of the slab. The underslab electrical and plumbing finished 26 and 34 days later than the LF (late finish) of the baseline schedule, respectively. The actual finish of the slab was on 9 September, 33 days later than the 6 Aug LF of the baseline schedule. Since the underground work associated was behind a total of 24 calendar days (see late start of masonry), an additional 9 calendar days of delay occurred in the slab-on-grade. All of this time is attributed to the government.

The next major feature of work analyzed was the installation of the roof. Completion of the roof allows for commencement of interior work. The baseline schedule shows a 4 Mar 99 LF for the membrane roof. With a completion date of 22 Mar, this is an obvious error in the contractor's sequencing of work. In order to get the roof work started, the contractor must have all of the structural steel, equipment supports, wind screen supports, and penetration framing completed. The baseline schedule allotted 13 days for steel deck installation, yet the installation spanned 41 days. The contractor contends that the plans were not coordinated and that many additional penetrations were required for food service equipment causing delays to the roof installation. This is substantiated by PC's 39 and 40 for gas flues and vents for items #37 and #61. The response to the associated RFI was sent to WGT on 11 Nov and the work was completed on 23 Nov.

However, the daily reports also show delays on the part of WGT during this time period. The metal deck installation started on 23 Sep. The erection of steel joists, girders, and beams were ongoing through 22 Sep. The installation of the steel deck could not have started any earlier despite the outstanding RFI's on vents and flues. Additionally, WGT could not complete the roof because they were waiting for the fabrication of the mechanical equipment supports. The submittal for the equipment supports was last returned to the contractor for revision on 13 Oct. WGT gave C&B Steel authorization to fabricate the supports on 20 Oct. The equipment supports were installed between 16 and 22 Nov. Placing of roof insulation commenced on 24 Nov. Since the baseline schedule had an unreasonable date for roofing, the start of the gypsum board on 23 Nov gives us the impact of the steel and roof deck delays. Per the baseline schedule, the gypsum walls were to commence on 14 Sep, representing a delay of 70 calendar days. Since the steel deck placement only started 31 days late (LS of 23 Aug, AS 23 Sep), 39 days of project delay are attributable to the steel and roof deck delays. These 39 days are considered a concurrent delay since both WGT and the government delayed the project over this time period.

Gypsum board completion was the final feature of work analyzed. There are several RFI's and notes in meeting minutes alluding to delays to the placement and finishing of gypsum walls as a result of utility connections to food service equipment. Having started the gypsum placement 70 days behind schedule, the contractor finished the gypsum placement on 8 February, only 62 days behind the LF of 6 Nov. No evidence of increased work hours substantiate possible claims of acceleration.

It was at this point on the schedule that the contractor submitted their proposal for extended overhead for 114 days (through a projected completion date of 14 July, see enclosure 6). The proposal schedule varied from the baseline schedule in many respects. The building was accepted on 8 Jul. Since the

building was completed in less time than projected, analysis of the remainder of the features of work was not done. Once again, there was no increase in manpower or man-hours between February and July.

The original contract completion date for the project was 22 March 1999. A one-day extension to the contract was given for a power outage on 29 June 1998 as part of PC#21 (mod A0022). The total government impact from the items discussed above is 74 calendar days. The extended contract completion date is 7 June 1999 (5 June 1999 is a Saturday). Of those 74 days, 32 are considered the sole responsibility of the government. The contractor should be compensated at a rate of $1000 per day for a total of $32,000. The remainder (42 days) are concurrent delays and shall be time only. Liquidated damages in the amount of $3700 per day for the 31 days between 7 June and the acceptance of the facility on 8 July ($114,700) should be assessed to William G. Tadlock, Inc.

To date, WGT has invoiced for $6,212,675 (through Mod A00026), but $112,000 has been withheld pending resolution of the contract delays (see enclosure 7). The total value of the contract (through Mod A00031/PC89) is $6,330,628. Considering the liquidated damages and extended overhead due each party to the contract, the government should approve a final invoice of $35,253 and release the $112,000 retention for a total contract payment of $6,247,928.

# EXHIBIT "F"

DEPARTMENT OF THE NAVY
SOUTHWEST DIVISION
RESIDENT OFFICER IN CHARGE OF CONSTRUCTION
MCAS MIRAMAR
SAN DIEGO CA 92145-5000

N68711-94-C-1754
Ser 5NMO.JL/1796
29 February 2000

WM. G. TADLOCK, INCORPORATED
1565 Hillsmont Drive
El Cajon CA 92020
DUNS# 173639766/CAGE 0DVM9

Subj: CONTRACT N68711-94-C-1754; ENLISTED DINING FACILITY, MARINE CORPS AIR STATION, MIRAMAR, SAN DIEGO, CA

Gentlemen:

Our office has received a copy of your letter dated 1 February 2000 to Mr. Robert Brower of the Southwest Division Contracts Department requesting a time extension to the subject contract and a release of all remaining retention. As requested, we have reviewed all outstanding aspects of the subject contract. After conducting this review of our files and interviewing the individuals involved during the construction phase, this letter summarizes our position in preparation for discussions with Mr. Paul Kennedy of Mr. Brower's office on 2 March 2000.

Time: The time or delay issue is the largest and most controversial item still outstanding on this contract. We have reviewed your letter and attachments of 1 February 2000. Our position is that the Government impacted the schedule causing a 72 calendar day delay that was concurrent with delays caused by your firm. Adding 72 calendar days to the current contract completion date provides a revised contract completion date of Saturday, 5 June 1999. We will add an additional two calendar days to Monday, 7 June 1999. Our position is as follows:

Our analysis is based on your February 1999 schedule that was submitted with your proposal for time and money for delays. An analysis of the civil site demolition reveals that there were several issues of unforeseen conditions associated with the underground work for the project. Hard digging and working around existing utilities which were not shown on the plans accounted for 7 workdays (24 March; 13, 14, 28 April; 12-14 May; 10 June). The building footings had to be excavated deeper in order to be on formational material. This work accounted for 3 workdays (12, 15, 24 June). Due to clayey soils, additional export and import was required for the building pad, accounting for 2 additional workdays (3, 4 June). Due to delays by your firm in submittals for section 02220 Demolition and Removal, and section 02301 Earthwork for Structures and Pavements, approval for these features of work did not occur until 23 April. Therefore, three workdays are concurrent and the balance (seven) is attributed to the Government. This translates into 9 calendar days.

Once the building footings were poured, the masonry walls could commence. Your firm points at the lack of CMU control joints as a delay on the project. The baseline schedule has a Late Start (LS) of 26 May. Actual Start (AS) for the masonry walls was 19 June for a difference of 24 calendar days. The walls were

EXHIBIT F

Subj: CONTRACT N68711-94-C-1754; ENLISTED DINING FACILITY, MARINE CORPS AIR STATION, MIRAMAR, SAN DIEGO, CA

completed on 16 August for a duration of 58 calendar days. With an original duration of 42 calendar days, the difference is 16 calendar days. Considering the fact that there were routinely only 3 masons on site and the fact that no masons were present on 10 August, the longer duration is not surprising. Although the additional layout for control joints was not time consuming, the additional 10 workdays is allotted for this additional work and coordination. This translates into 14 calendar days.

The next major feature of work, the placing of the slab-on-grade was dependent upon all of the underground work and the underslab plumbing and electrical. There were several RFIs generated concerning the underslab utilities that had to be resolved prior to the placement of the slab. The underslab electrical and plumbing finished 26 and 34 days later than the Late Finish (LF) of the baseline schedule, respectively. The actual finish of the slab was on 9 September, 33 days later than the 6 August LF of the baseline schedule. Since the underground work associated was behind a total of 24 calendar days (see late start of masonry), an additional 9 calendar days of delay occurred in the slab-on-grade. All of this time is attributed to the Government.

The next major feature of work analyzed was the installation of the roof. Completion of the roof allows for commencement of interior work. The baseline schedule shows a 4 March 99 LF for the membrane roof. With a completion date for the whole project of 22 March 99, this is an obvious error in your firm's sequencing of work. In order to get the roof work started, all of the structural steel, equipment supports, windscreen supports, and penetration framing must be completed. The baseline schedule allotted 13 days for steel deck installation, yet the installation spanned 41 days. Your firm contends that the plans were not coordinated and that many additional penetrations were required for food service equipment, causing delays to the roof installation. This is substantiated by PCs 39 and 40 for gas flues and vents for items #37 and #61. The response to the associated RFI was sent to your firm on 11 November and the work was completed on 23 November.

However, the daily reports also show delays on the part of your firm during this time period. The metal deck installation started on 23 September. The erection of steel joists, girders and beams were ongoing through 22 September. The installation of the steel deck could not have started any earlier despite the outstanding RFIs on vents and flues. Additionally, your firm could not complete the roof because you were waiting for the fabrication of the mechanical equipment supports. The submittal for the equipment supports was last returned to you for revision on 13 October. Your firm gave C&B Steel authorization to fabricate the supports on 20 October. The equipment supports were installed between 16 and 22 November. Placing of roof insulation commenced on 24 November. Since the baseline schedule had an unreasonable date for roofing, the start of the gypsum board on 23 November provides us with the impact of the steel and roof deck delays. Per the baseline schedule, the gypsum walls were to commence on 14 September, representing a delay of 70 calendar days. Since the steel deck placement only started 31 days late (LS of 23 August, AS 23 September), 39 days of project delay are attributable to the steel and roof deck delays. These 39 days are considered a concurrent delay since both your firm and the Government delayed the project over this time period.

Gypsum board completion was the final feature of work analyzed. There are several RFIs and notes in meeting minutes alluding to delays to the placement and finishing of gypsum walls as a result of utility connections to food service equipment. Having started the gypsum placement 70 days behind

schedule, your firm finished the gypsum placement on 8 February, only 62 days behind the LF of 6 November. There is no evidence of increased work hours to substantiate possible claims of acceleration.

It was at this point in time that you submitted your proposal for extended overhead for 114 days through a completion date of 14 July. The proposed schedule varied from the baseline schedule in many respects. The building was accepted on 8 July. Since the building was completed in less time than projected, analysis of the remainder of the features of work was not done. Once again, there was no increase in manpower or man-hours between February and July.

In summary, the original contract completion date for the project was 22 March 1999. A one-day extension to the contract was given for a power outage on 29 June 1998 as part of PC #21, modification A00022. The other items discussed above were:

| **Item:** | **Delay: (Calendar Days)** |
|---|---|
| Civil Site Demolition | 9 |
| CMU Control Joints | 14 |
| Slab on Grade Placement | 9 |
| Roof | 39* |
| Power outage on 29 June 1998 | 1 |
| Total | 72 |

*Concurrent Delay

The total Government impact from the above is 72 calendar days. The extended contract completion date is 7 June 1999 or 74 calendar days (5 June 1999 is a Saturday). Of the 74 days, 32 are considered the sole responsibility of the Government. We believe that your firm should be compensated at a rate of $1,000 per day, for a total of $32,000. The remaining 42 days are concurrent delays and shall be time only. Liquidated Damages in the amount of $3,700 per day for the 31 days between 7 June and 8 July 1999 for a total of $114,700 should be assessed to your firm in accordance with the contract requirements.

**Outstanding Change Orders:**

There are four Potential Changes (PCs) that are outstanding at this time. Three are credits to the Government. They are:

PC 59 Deletion of metal reveal in the dining area

The labor to install this metal reveal was never done. Our estimates of what the labor effort would have been is between $5,000 and $7,500. Our position is that a credit is due to the Government for $5,000 for labor avoided.

PC 76 Widen wall at griddle cove

This work was ordered under Modification number A00027, but never performed by your firm. Our position is that a credit of $2,747 is due the Government.

PC 81 Lighting Control

This work was ordered under Modification number A00029, but never performed by your firm. Our position is that a credit of $851 is due the Government.

Subj: CONTRACT N68711-94-C-1754; ENLISTED DINING FACILITY, MARINE CORPS AIR STATION, MIRAMAR, SAN DIEGO, CA

PC 88 Roof Penetration Lead

We have reviewed the As-built drawings and can only find two additional penetrations in the roof for the food service items. Your letter indicated that there were as many as 55 additional penetrations in the roof. Our position at this point is that your firm has not documented a significant change to your contract.

Our office had previously requested a credit for PC 87 for the deletion of two ice cream machines. We have cancelled this PC and we will not be pursuing this credit.

This letter summarizes our position on all known outstanding issues. If you disagree or have additional information that should be considered, please notify our assigned Contract Specialist, Ms. Kathy Valentine or the undersigned. We look forward to the meeting with Mr. Paul Kennedy of the Southwest Division Contracts Office at 1000 on 2 March 2000.

Sincerely,

J. A. ANGELL, II

Copy to: File
Read File
5NMO
5NM2
5NM2.KV
5NCN.CP
02C

The Law Firm of Thomas M. Finrow, J.D.
Suite 125
9131 Fletcher Parkway
La Mesa, CA 91942

FAX TRANSMISSION
FAX Number: (619) 577-6211

BRAC CONSTRUCTION OFFICE
RESIDENT OFFICER IN CHARGE OF CONSTRUCTION
PO BOX 452004
MCAS MIRAMAR
SAN DIEGO, CA 92145-2004
(619) 577-6202 (DSN 267-6202)

Date: 29 FEB 00

From: _X_ LCDR J. A. ANGELL
ROICC
858) 577-6196

_VALERIE BRIDGES
Management Assistant
(858) 577-6202

___LINDA ALLEN
Lead Contract Specialist
(858) 577-4588

To: **William Tadlock**

Company/Command: **WM G. Tadlock, Inc**
FAX Number: (619) 441-8964

Should you not receive (including this sheet), please contact sender.

Notes:

# EXHIBIT "G"

AMENDMENT OF SOLICITATION/ MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| J | 1 \| 2 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(IF APPLICABLE) |
|---|---|---|---|
| A00033 | See 16C | | P005 |

6. ISSUED BY — CODE

ROICC MIRAMAR
ATTN: 5NM0
PO BOX 452004
SAN DIEGO CA 92145-2004
Valentinekc@efdsw.navfac.navy.mil

7. ADMINISTERED BY (If other than Item 6) — CODE

Defense Finance & Accounting Service
Operating Location Oakland
Attn: Code FPV
P. O. Box 23870
Oakland, California 94623-3870

8. NAME AND ADDRESS OF CONTRACTOR(No., street, county, State and ZIP Code)

WM. G. TADLOCK, INCORPORATED
9131 FLETCHER PARKWAY SUITE 124
LA MESA CA 91942
DUNS# 173639766/CAGE 0DVM9

CODE B02337 FACILITY CODE

| (x) | |
|---|---|
| | 9A. AMENDMENT OF SOLICITATION NO. |
| | 9B. DATED (SEE ITEM 11) |
| X | 10A. MODIFICATION OF CONTRACT/ORDER NO. N68711-94-C-1754 |
| | 10B. DATED (SEE ITEM 13) 5 February 1998 |

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitations and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)
AA 1798021205 2581 0250 11211 0 068711 2A 000000 AA000R024986 $-109,376.00 LIQD
FSP Number: N0002598AL63344 FIPS Number: h18m3r51

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| (x) | |
|---|---|
| X | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A FAR 52.211-12 LIQUIDATED DAMAGES - CONSTRUCTION (APR 1984) |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation, date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D: OTHER (Specify type of modification and authority) |

E: IMPORTANT: Contractor [X] is not, ☐ is required to sign this document and return ________ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

CONTRACT: N68711-94-C-1754, Enlisted Dining Facility, Marine Corps Air Station, Miramar, San Diego, CA

Description of this Modification continues on page 2.

TAD-MIRA 0530

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| EXHIBIT G | | JOSEPH A. ANGELL II Contracting Officer | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| (Signature of person authorized to sign) | | BY [signature] ROICC MIRAMAR (Signature of Contracting Officer) | 2 MAY 01 |

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE
30-105
STANDARD FORM 30 (REV. 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

BLOCK 14. DESCRIPTION OF MODIFICATION

Pursuant to Federal Acquisition Regulation (FAR) 52.211-12, LIQUIDATED DAMAGES CONSTRUCTION (APR 1984) you are hereby assessed LIQUIDATED DAMAGES in the amount of <$109,376.00>, determined as follows:

| | |
|---|---|
| Contract completion date: | 23 March 1999 |
| Beneficial occupancy acceptance date: | 08 July 1999 |
| Number of days assessed: | 106 Calendar Days |
| Rate of assessment: | $3,700.00/DAY |
| Total amount assessed: | $392,200.00 |
| Assessment this modification of funds remaining: | $109,376.00 |

Accordingly, the contract price is reduced in the amount of <$109,376.00>, from $6,330,650.00 to $6,221,274.00. The contract completion date remains 23 March 1999.

# EXHIBIT "H"

DEPARTMENT OF THE NAVY
SOUTHWEST DIVISION
NAVAL FACILITIES ENGINEERING COMMAND
1220 PACIFIC HIGHWAY
SAN DIEGO, CA 92132-5190

4200.1.b (1)(c)
Ser 02C/1926
January 26, 2002

WM. G. TADLOCK, INC.
STE 124
9131 FLETCHER PARKWAY
LA MESA CA 91942

Subject: CONTRACT N68711-94-C-1754; ENLISTED DINING FACILITY, MARINE CORPS AIR STATION, MIRAMAR, SAN DIEGO, CALIFORNIA

Gentlemen:

The Resident Officer in Charge of Construction (ROICC) Miramar has recommended I issue a Contracting Officer's Final Decision demanding $282,823.00 from your company for payment of liquidated damages in excess of the amount assessed to date. The ROICC has determined that the record supports no excusable delay that would mitigate the late completion of contract work. The ROICC contends that it is appropriate to assess liquidated damages for the time period from March 24, 1999, to and including, July 8, 1999, for a total of 106 calendar days, at a contractually established rate of $3,700.00 per day.

Included with its recommendation, in addition to ROICC documents, are the following Tadlock documents:

(1) Thomas Finrow letter to Southwest Division dated February 1, 2000
(2) Tadlock Request for Equitable Adjustment (REA) dated February 19, 1999 (rev. March 15, 2000)
(3) Tadlock Schedule Analysis dated January 10, 2000 (rev. March 4, 2000)
(4) Thomas Finrow undated letter (rec'd July 27, 2000)
(5) Tadlock Summary of Potential Government Caused Delays dated March 23, 2001

I request you provide me any other available information that you feel I should consider prior to taking action on this recommendation no later than February 8, 2002. I would be agreeable to meet to discuss this matter further should you wish to do so. If any additional information or clarifications are needed, you may contact me at (619) 532-3831.

Sincerely,

PAUL J. KENNEDY
Special Assistant for Claims
Contracting Officer

RECEIVED
JAN 29 2002
Wm. G. TADLOCK INC.

EXHIBIT H

T

# EXHIBIT "I"

File 4765-1 corr

SPARBER RUDOLPH ANNEN
A PROFESSIONAL LAW CORPORATION • FOUNDED 1974

701 "B" STREET, SUITE 1000
SAN DIEGO, CALIFORNIA 92101-8109
(619) 239-3600 TEL
(619) 239-5601 FAX

Website: www.sparberlaw.com
E-mail: rannen@sparberlaw.com

RICHARD E. SPARBER
GARY B. RUDOLPH♦
RICHARD J. ANNEN*
TODD R. GABRIEL
JACK ANDERSON
MELVIN E. MORRIS
MICHAEL W. JACOBS
RONALD M. TOIGO
DENNIS G. BEZANSON
RANDALL B. KLOTZ

MICHAEL D. NAGLE
OF COUNSEL
KEITH H. RUTMAN
OF COUNSEL
GARY B. ELMER
OF COUNSEL

JAMES P. FERGUSON
1947-2003

ALSO LICENSED TO PRACTICE IN:
*MICHIGAN
♦NEW JERSEY

September 30, 2005

**Via e-mail & Original via Federal Express**
Ms. Leslie Cayer Ohta, Esq.
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530

Re: *Gladstone v. United States of America*
USCFC Case No. 04-1145C ("Gladstone II")
Response to Motion for Leave to File Amended Answer to Complaint

Dear Ms. Ohta:

We have received the Government's Motion for Leave to File an Amended Answer to Complaint. We have previously indicated our intention to oppose any such motion.

Upon review of the substance of the motion, we note that the proposed Amended Answer merely restates the Government's prior answer, and adds to it an affirmative counter claim. It is our position that such affirmative counter claim is entirely inappropriate and invalid, since William G. Tadlock, Inc. is the debtor in a pending bankruptcy proceeding in the bankruptcy division of the United States District Court, District of Southern California. You are clearly aware of the bankruptcy proceeding, since it has been acknowledged affirmatively in the Government's prior pleadings.

A copy of the Notice of Automatic Stay filed in Case No. 01-07989-JH11 is attached for your reference and file. By its terms, the Notice asserts:

> As a result of this filing, certain acts and proceedings against the debtor(s) and their property are stayed as provided in 11 U.S.C. 362 (a).



EXHIBIT I

> The effect of this stay is equivalent to an automatic restraining order against creditors from commencing or continuing any lawsuit, enforcement of judgment, ...without first applying to the Bankruptcy Court for Relief from Stay, by way of a complaint as provided in Part IV of the official Bankruptcy Rules.

Pursuant to Federal Rules of Civil Procedure, all actions against William G. Tadlock, Inc. are subject to the automatic stay imposed by the Bankruptcy Court. Any and all affirmative claims against William G. Tadlock, Inc. must be made as to the bankruptcy estate, in the Bankruptcy Proceeding. We see no indication that the Federal Government ever lodged a proof of claim against the bankruptcy estate, for the affirmative action set forth in its proposed counter claim.

Please withdraw your Motion for Leave to File Amended Answer to Complaint, and proposed counterclaim, and remove that matter from the calendar in the Federal Court of Claims. Unless such action is taken, we will have no choice but to file for enforcement of the automatic stay, and seek all available remedies including sanctions.

Thank you for your anticipated cooperation in this matter.

Very truly yours,

SPARBER RUDOLPH ANNEN, APLC

Jack Anderson, for
Richard J. Annen

RJA/cac
cc: Leslie T. Gladstone, Trustee

4765-1/218277.1

Streeper & Shanner
Attorney at Law
2067 First Avenue
San Diego CA 92101
(619) 232-3057

FILED PT
2001 AUG -2 AM 10: 06
CLERK
U.S. BANKRUPTCY CT.
SO. DIST. OF CALIF.

Attorney for Debtor(s)
WM. G. TADLOCK, INC.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALFORNIA

In re:
WM. G. TADLOCK, INC.

Debtor(s)

Case No. 01-07989-JH11

NOTICE OF AUTOMATIC STAY

Re: GIC 746459

TO:
Turner & Maasch, Inc.
550 West "C" Street Ste 1150
San Diego CA 92101

The above-named Debtor(s) filed a petition on **August 1, 2001** under the provisions of the Bankruptcy Code. As a result of this filing, certain acts and proceedings against the debtor(s) and their property are stayed as provided in 11 U.S.C. 362 (a).

The effect of this stay is equivalent to an automatic restraining order against creditors from commencing or continuing any lawsuit, enforcement of any judgement, enforcement of any lien against property, or continuing any levy on property, inclding wages, without first applying to the Bankruptcy Court for Relief from Stay, by way of a complaint as provided in Part VII of the official Bankruptcy Rules.

Your attention is directed to said Rules for exception and for procedure to follow in seeking relief from stay.

Dated: Aug 1, 2001

Robert B. Shanner, Attorney for Debtor(s)

Streeper & Shanner
Attorney at Law
2067 First Avenue
San Diego CA 92101-2011
(619) 232-3057

Attorney for Debtor(s)
WM. G. TADLOCK, INC.

FILED PT
2001 AUG -2 AM 10: 06
CLERK
U.S. BANKRUPTCY CT.
SO DIST. OF CALIF.

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>WM. G. TADLOCK, INC<br><br>Debtor(s) | Case No. 01-07989-JM11<br><br>PROOF OF SERVICE |

I, the undersigned, hereby certify that I served a true copy of the within :

**NOTICE OF AUTOMATIC STAY**

to the person listed below on **<u>August 1, 2001</u> First Class, United States Mail, Postage Pre-Paid.**

Turner & Maasch Inc. 550 West "C" Street Ste 1150 San Diego CA 92101
Judge Janice Sammartino 220 West Broadway Dept 71 PO Box 120238 San Diego CA 92112

I certify under penalty of perjury that the foregoing is true and correct.

Date: 8-1-01

Robin Pike

Robin L. Pike
2067 First Avenue
San Diego CA 92101

FedEx. Ship | Track/History | Address Book | Preferences | Fast Ship | Reports | My Profile

<< Log out Home Quick h

Your Shipment Details:

| | | | |
|---|---|---|---|
| **Ship to:** | LESLIE CAYER OHTA, ESQ.<br>U.S. DEPARTMENT OF JUSTICE<br>1100 L STREET, N.W.<br>WASHINGTON, DC 20005<br>US<br>(202) 307-0252 | **Package Type:** | FedEx Envelope |
| | | **Pickup/Drop Off:** | give to scheduled courier at my location |
| | | **Weight:** | 1 LBS |
| | | **Dimensions:** | 0 x 0 x 0 |
| | | **Declared Value:** | 0 USD |
| | | **Shipper Account Number:** | 115862383 |
| | | **Bill transportation to:** | 115862383 |
| **From:** | NANCY SELLERS<br>SPARBER RUDOLPH ANNEN<br>701 B STREET, SUITE 1000<br>SAN DIEGO, CA 921018109<br>US<br>(619) 239-3600 | **Courtesy Rate Quote** | *18.63 |
| | | **Discounted variable %** | 0.00 |
| | | **Special Services:** | |
| | | **Purpose:** | |
| | | **Shipment Type:** | Express |
| **Tracking no:** | 790663902841 | | |
| **Your reference:** | 4765-1 | | |
| **Ship date:** | Sep 30 2005 | | |
| **Service Type:** | Priority Overnight | | |

Print

Return to next step

## Please Note

. *The courtesy rate shown here may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions, and other factors. Consult the applicable FedEx Service Guide or the FedEx Rate Sheets for details on how shipping charges are calculated.

FedEx will not be responsible for any claim in excess of $100 per package, whether the result of loss, damage, delay, non-delivery, misdelivery, or misinformation, unless you declare a higher value, pay an additional charge, document your actual loss and file a timely claim. Limitations found in the current FedEx Service Guide apply. Your right to recover from FedEx for any loss, including intrinsic value of the package, loss of sales, income interest, profit, attorney's fees, costs, and other forms of damage whether direct, incidental, consequential, or special is limited to the greater of $100 or the authorized declared value. Recovery cannot exceed actual documented loss. Maximum for items of extraordinary value is $500, e.g., jewelry, precious metals, negotiable instruments and other items listed in our Service Guide. Written claims must be filed within strict time limits; Consult the applicable FedEx Service Guide for details.

**From:** Nancy Sellers
**To:** leslie.ohta@usdoj.gov
**Date:** 9/30/2005 2:37 PM
**Subject:** Gladstone v. United States of America

Dear Ms. Ohta:
Please find attached correspondence from Mr. Anderson dated September 30, 2005.
Nancy Sellers, Assistant to Jack Anderson

Nancy Sellers
SPARBER RUDOLPH ANNEN, APLC
701 B Street, Suite 1000
San Diego, California 92101-8109

(619) 239-3600
(619) 239-5601 Facsimile
nsellers@sparberlaw.com

This transmission is intended only for the individual or entity to which it is addresed, and may contain privileged and/or confidential informaton. If you are not the intended recipient, please do not use, disseminate, or copy this material. If you have received this transmission in error, please notify us immediately by telephone (619) 239-3600, return this transmission, and delete or destroy any copies (digital or paper).