IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| LESLIE GLADSTONE, AS TRUSTEE OF WILLIAM G. TADLOCK, INC. BANKRUPTCY ESTATE, | ) | |
| Plaintiff, | ) | 04-1145 C (Judge Nancy Firestone) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Pursuant to Rule 7.1(c) of the Rules of the United States Court of Federal Claims ("RCFC", the defendant, the United States, respectfully submits its reply to "Plaintiff's Memorandum of Points and Authorities In Opposition to Defendant's Partial Motion for Summary Judgment "("Pl.'s Opp."), 1-22.

On August 30, 2005, we filed a motion for partial summary judgment seeking judgment, as a matter of law, upon the ground that the bilateral contract modifications containing full releases constitute an accord and satisfaction, thereby precluding plaintiff from recovering damages based upon work covered by those modifications. Gladstone contends in her opposition that the Government's motion is fatally flawed because it fails to dispose of an entire claim and that the release language does not bar Tadlock's delay damages. Pl.'s Opp., 1-22.

ARGUMENT

I. The Government's Motion Is Not Fatally Flawed

As we demonstrate below, these arguments have no merit. The Government agrees with Gladstone that the plain language of RCFC 56 indicates that it is not appropriate to use summary

judgment as a vehicle for fragmented adjudication of non-determinative issues. Subsection (a) of the Rule states that a party "seeking to recover upon a claim or counterclaim ..., may ... move ... for a summary judgment in the party's favor upon all or any part thereof." RCFC. 56(a) Furthermore, subsection (c) states that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages." See RCFC 56(c). The clear implication is that the issue of liability is the only non-determinative issue which may be disposed of on summary judgment.

What Gladstone fails to acknowledge is that what the Government seeks is in fact judgment upon the non-determinative issue of liability for all costs associated with the work covered by the bilateral contract modifications, irrespective of whether that those costs were caused by differing site conditions, defective specifications, or any other alleged breach of the contract. Our motion is premised upon the legal proposition that the inclusion of full release language in a bilateral contract modification bars a claim based upon the same facts and circumstances covered by the modification under the defense of accord and satisfaction. Here we are not dealing with an "element of a claim," but rather, whether the defense of accord and satisfaction bars the claim. The issue is whether the Government can be held liable for delays allegedly resulting from acts or omissions covered by a bilateral contract modification containing a full release of liability.

Gladstone does not cite to a single Court of Federal Claims case or a single Court of Appeals for the Federal Circuit case for its proposition that the Government's motion is "fatally flawed" because RCFC 56 precludes the filing of our motion for partial summary judgment. Pl.'s Opp., 1-22. Gladstone's reliance upon Securities and Exchange Commission v. Thrasher,

152 F. Supp.2d 291 (S.D.N.Y. 2001), and Arado v. General Fire Extinguisher Corp., 626 F. Supp. 506 (N. D. IL), is misplaced. In both cases, the courts denied the motions for partial summary judgment because they sought to have decided non-dispositive fact issues; issues that constituted elements of claims, not claims. This is not the situation here.

II. The Defense Of Accord And Satisfaction Bars A Claim Based Upon The Same Facts And Circumstances Covered By A Modification Containing Full Release Language.

The gravamen of Gladstone's opposition to defendant's motion for partial summary judgment is her assertion that becasue Tadlock's proposals did not address time and delay costs, the bilateral modifications containing a full release of liability can not constitute a waiver by Tadlock to seek such costs. Pl.'s Opp., 1-22. Ms. Gladstone's position is unsupported and unsupportable.

According to Ms. Gladstone, for all the bilateral contract modifications containing a full release, the Government "deferred the extension of the contract period." Pl.'s Opp. at 5.
The only evidence proffered by Ms. Gladstone in support of this proposition are the declarations of William Tadlock, the president of W. G. Tadlock, Inc., the debtor in the Gladstone bankruptcy estate, and Steven Tadlock, the vice-president of W. G. Tadlock, Inc., who was responsible for contract oversight during the performance of the contract. Declarations of William G. Tadlock and Stephen M. Tadlock In Support of Opposition to Defendant's Partial Motion for Summary Judgment ("WGT Decl." and "SMT Decl.").

According to Stephen Tadlock, for all of the bilateral modifications that are the subject of the Government's motion, "the Government negotiated an adjustment in price but deferred the extension of the 'Contract Performance Period' for the extra time needed to complete the extra

corrective work, leading WGT to understand that the excess costs for extension of the contract performance period would be negotiated at a later date"(emphasis added). SMT Decl., ¶ 20. Stephen Tadlock provides absolutely no basis for this "understanding." See id. In fact, Stephen Tadlock does not even contend that he personally participated in the negotiations that led to the execution of any of the bilateral modifications. Id.

On the contrary, Stephen Tadlock states only that "representative s of WGT, representatives of the Government, and representatives of WGT's principal subcontractors attended a series of 'Partnering Sessions,' at which WGT, the Government, and WGT's principal subcontractors negotiated ways to work cooperatively to mitigate construction delays and move forward with construction, while addressing and attempting to resolve the details of the problems that caused these delays. Id. ¶ 16. Stephen Tadlock fails to allege that he has personal knowledge of the events in questions. Moreover, he fails to identify the individuals involved in the negotiations that resulted in the execution of the bilateral modifications that are the subject to the Government's motion and does not identify what statements were allegedly made by the Government's contracting officials upon which he based his "understanding" that the parties to the modifications intended something other than what the clear and unambiguous language of the modifications indicate. Paragraph 16 of the Declaration of William G. Tadlock is identical to paragraph 16 of Stephen Tadlock's declaration. WGT Decl.

Stephen Tadlock also asserts the "individual Proposals did not address time and delay costs. Any release as to each Modification was a release only as to the corresponding Proposal and was not applicable to any claim for additional time or for additional impact delay cost." SMT Decl., ¶21. Paragraph 22 of the William Tadlock's declaration is virtually identical to

paragraph 21 of Stephen Tadlock's declaration. WGT Decl., ¶ 22. Neither Tadlock provides any basis whatsoever for their unsupportable contention that the Government is bound by statements a contractor makes in his proposal submitted prior to the negotiation of a contract modification rather than by the terms of the executed modification itself.

The Tadlocks' contention is unequivocally contradicted by the plain language of the contract modifications at issue here that state:

> CONTRACTOR'S STATEMENT OF RELEASE
>
> Acceptance of this modification by the contractor constitutes an accord and satisfaction and represents payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work as herein revised.

The general rule is that an executed bilateral modification with no reservation of rights qualifies as an accord and satisfaction. Starflight Boats v. United States, 48 Fed. Cl. 592, 602 (2001) (quoting C & H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246, 252 (1996)). According to the parol evidence rule, a party is not permitted to introduce extrinsic evidence to change the terms of an unambiguous contract. Kanag'Iq Constr. Co., 51 Fed. Cl. at 47. Thus, when a bilateral modification includes an express release provision, the contractor is barred from introducing other evidence to try to narrow the scope of the release. Id. As this Court has made clear, "[a] contractor who executes an unconditional general release and fails to exercise his right to reserve claims is barred from maintaining a suit for damages or additional compensation under the contract based on events that occurred prior to the execution of the release." Abatement Contracting Corp. v. United States, 58 Fed. Cl. 594, 611 (2003). A plaintiff's allegation that it did not intend to waive claims in signing the modification is not

sufficient to stave off summary judgment for the Government. Safeco Credit, 44 Fed. Cl. at 420.

While it is true that the behavior of the parties after signing the modification can be relevant to determining intent, Ms. Gladstone has failed to demonstrate that the Government continued to consider, negotiate, or audit Tadlock's claim after the execution of the contract modifications.[1] See Community Heating, 987 F.2d at 1581. If, however, the contractor executes several bilateral modifications containing release clauses, and then waits until a later modification to change the release language, as is the case here, it is more likely that the parties had a meeting of the minds on the release language of the earlier modifications. See John Massman Contracting Co. v. United States, 23 Cl. Ct. 24, 29 (1991).

CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant partial summary judgment in its favor with respect to the liability of the Government for work covered by the bilateral modifications containing a full release of liability which modifications represent payment in full for both time and money and for any and all costs, impact effect, and for delays and disruptions arising out of, or incidental to, the work covered by the modification.

Respectfully submitted,

PETER D. KIESLER
Assistant Attorney General

DAVID M. COHEN
Director

[1] Not all post-modification discussions of the claim will defeat the assertion of the accord and satisfaction defense; the relevance of the discussions depends on what they show about the parties' intent at the time of entering the modifications. National Steel & Shipbuilding Co. v. United States, 49 Fed. Cl. 579, 594 (2001).

s/ Deborah A. Bynum
DEBORAH A. BYNUM
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street NW
Attn: Classification Unit, 8th Floor
Washington, D.C. 20530

October 21, 2005 Attorneys for Defendant